## Commonwealth v. Mellor, Appellant.

**340**

Argued October 1, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*L. F. McCabe*, with him *J. Jerome Katz* and *Thomas J. Minnick, Jr.*, for appellant.—A confession or statement of defendant is not admissible in its entirety which, in addition to describing the attempted robbery during which the crime alleged in the indictment occurred, details other robberies forming a series continuous in time, but otherwise unconnected with the crime alleged in the indictment: Com. v. Ferrigan, 44 Pa. 386; Com. v. Jones, 280 Pa. 368; Com. v. Wilson, 186 Pa. 1; Com. v. Bell, 288 Pa. 29; Com. v. Weiss, 284 Pa. 105; Com. v. Haines, 257 Pa. 289; Goersen v. Com., 99 Pa. 388; Com. v. Winter, 289 Pa. 284.

*Charles F. Kelley*, Assistant District Attorney, with him *John Monaghan*, District Attorney; for appellee.—Where the trial judge fails to charge on some point which counsel regards as essential, the judge's attention should be called to it before the jury leaves the bar, in order to correct any omission: Com. v. Zappe, 153 Pa. 498; Zell v. Com., 94 Pa. 258; Com. v. Peach, 170 Pa. 173; Com. v. Eckerd, 174 Pa. 137; Com. v. Boschino, 176 Pa. 103; Com. v. Doughty, 139 Pa. 383; Com. v. Swihart, 138 Pa. 629; Com. v. Morrison, 193 Pa. 613; Com. v. Washington, 202 Pa. 148; Com. v. Varano, 258 Pa. 442; Com. v. Page, 265 Pa. 273.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 26, 1928:

Charles F. Mellor was found "guilty of murder of the first degree, with the penalty of death," and sentenced accordingly; he has appealed.

On March 23, 1928, about ten o'clock in the evening, one Harrison, the manager of the Cross Keys Theater, Philadelphia, left that establishment carrying a satchel containing the cash receipts of the day; he was accompanied by a policeman named Clark, who acted as his bodyguard. Almost immediately upon emerging from the theater, they were confronted by defendant,

with a pistol in his hand, who said, "Stick 'em up!"
When Harrison and his companion continued to move
on, defendant fired. Harrison dropped to the pavement,
shot to death. About this time, Barclay, the confederate
of defendant, fired from an automobile that had swiftly
backed up to the scene, and in which the defendant sub-
sequently made his escape. A second shot was fired by
defendant, and several by Officer Clark. The latter and
a bystander testified positively that Harrison was hit by
the first shot from defendant's pistol, and this was to
some extent corroborated by a third eye-witness.

When on the stand in his own defense, Mellor testi-
fied that neither he nor the officer fired the first shot,
leaving the inference to be drawn that it must have come
from Barclay's pistol, yet the major defense at trial
seems to have been that Harrison was accidentally killed
by a bullet from Clark's revolver. This defense, which
Mellor's counsel attempted to develop on cross-examina-
tion of the Commonwealth's witnesses, without gaining
any support for it, was submitted to the jury in a way
favorable to defendant; for the trial judge charged
that, if the jurors believed Harrison was killed by a
shot from Clark's revolver, Mellor should be acquitted.

Aside from the defense just referred to, which was de-
cided against appellant, the only other defense indicated
by the record is that Barclay was the controlling mind
and Mellor his tool. Accused, when on the stand as a
witness in his own defense, told how Barclay had
brought the guns to the scene of the "hold-up," had given
one to defendant, had instructed him where to stand,
and had arranged a signal for him to give at the proper
moment. To substantiate the defense now under dis-
cussion, defendant stated that, "when I told them to
stick 'em up, I stood there petrified like a mummy, I
couldn't move"; and again, "I was standing there petri-
fied, I couldn't move." As Mellor's contention that,
though a participant in the attempted robbery, he was
under control of a confederate and did not personally do

the killing, was no defense in law to the homicide, it can be viewed only as a plea to the jury to show mercy in the exercise of the power conferred on that body, in its "discretion," to fix the penalty for a first degree murder at either "death" or "imprisonment for life."

Defendant frankly admitted that, the night before the shooting, he and Barclay, after a visit to and inspection of the scene of the prospective "hold-up," had planned to rob Harrison on the following evening, and that they were attempting to carry out this plan at the time the homicide occurred.

The first question we have to decide is, On such a record, was it reversible error for the trial judge to admit in evidence a voluntary written statement, made to the police by defendant after his arrest, which, "in addition to describing [the] attempted robbery during which the crime charged in the indictment [murder] occurred, details [additional] robberies, forming a series continuous in time but [in the main] otherwise unconnected with the crime charged in the indictment?" The above quotation is taken from appellant's statement of questions involved.

When defendant's written confession, now under consideration, was offered by the district attorney, counsel for the accused made the following objection: "I object to any portion except the portion which deals directly with the crime for which the defendant is on trial." The exception to the overruling of this objection is the only thing upon the record which brings up for review the question of the inadmissibility of the confession on the ground that it dealt with offenses other than the crime on trial. Mellor now admits, in his brief, that certain parts of this confession, not dealing directly with the homicide, contain evidence "of two other felonies, in one of which the revolver used in the attempted holdup was stolen, and in the other of which the automobile used in the attempted holdup was stolen," in preparation for what subsequently took place; he further admits that

his statements as to these particular additional crimes brought them "so close" to the offense on trial as to render them admissible in evidence. He complains, however, that the confession as a whole contains references to still other crimes which, in his view, are in no way so connected with the homicide, or any matter arising on the trial of that offense, as to make them competent proof on any proper theory. Since the objection to the confession was to all parts thereof "except the portion which deals directly with the crime......on trial," and since appellant now admits that certain portions of the confession, not dealing directly with this crime, were properly admissible in evidence, it is plain that, technically, the objection was correctly overruled by the court below; and, since the overwhelming weight of the evidence, irrespective of the confession, supports the verdict on which judgment was entered, the ends of justice would be amply served if we stood on strictly technical grounds and ended our consideration of the present assignment with this statement. But, owing to the gravity of the case, we shall further consider the matter in hand.

Appellant, combating the admission of the confession as a whole, depends upon our authorities which hold that statements in regard to other crimes committed at other times, at other places, and upon other persons, bearing no connection with the homicide on trial, are not admissible to prove a defendant guilty of that offense. The cases relied on by appellant were all decided without regard to the recent Act of May 14, 1925, P. L. 759, and in each instance the question resolved was, Under what circumstances could proof of the commission of other offenses, not directly connected with the one for which defendant was being tried, be received in evidence as tending to prove the commission of the particular offense on trial? No such question really arises here. In this case, all the evidence shows that the shot which killed Harrison was fired either by defendant himself or by Barclay, his confederate in the crime;

and, after defendant's confession was received in evidence, he, on the stand, admitted the killing, that it occurred in the perpetration of a robbery, and the fact of his participation. In view of these concessions, any possible technical irregularity in accepting in evidence defendant's confession to prove him guilty of murder, was harmless error. But it is not necessary to rely upon this position.

The Act of 1925 provides that, "Every person convicted of......murder of the first degree shall be sentenced to suffer death......, or to undergo imprisonment for life, at the discretion of the jury trying the case, which shall fix the penalty by its verdict." On the record before us, the jurors were entitled to know whether Mellor was the tool of his confederate or the principal actor in the tragedy, so that this pregnant fact might be taken into consideration in assessing punishment; and defendant's confession as a whole sheds much helpful light on that question. Moreover, defendant's description of the other offenses stated in the confession showed plainly what he meant when he ordered Harrison and his guard to "stick 'em up," and indicated the improbability of his story on the stand that, after making this demand, he did not shoot, but stood there "petrified like a mummy." This confession contains admissions of a course of crime covering a considerable period immediately prior to the homicide, in which Mellor and Barclay engaged in no less than four robberies, some seven burglaries, and several larcenies, and makes the fact quite clear that the term "stick 'em up," meant that submission, as the price of life, was demanded of their victims.

In Com. v. Parker, 294 Pa. 144, 154, we said, and here repeat: "The Act of 1925 was not passed to help habitual criminals, and we take judicial knowledge of the fact that offenders of that designation have become so general that the law, not only lex scripta but non scripta, must advance to protect society against them." This being so, where the trial judge, in a case like the

present, was properly convinced from the confession of the defendant, as the court below evidently was, that the prisoner at bar was an habitual offender against society, a burglar and robber of the type that would commit murder when necessary to accomplish his purpose, where the evidence indicated such to be his general manner of life, and where the defendant asked that, if convicted, the jury, in assessing punishment, would extend mercy to him, we cannot say it was reversible error to receive his full confession in evidence, even though it is possible that the admissions therein of other offenses may have militated in a general way against him.

The only other complaint covered by appellant's statement of questions involved is that the trial judge erred when he omitted to instruct the jury to restrict its consideration of the parts of defendant's confession describing crimes other than the one on trial, "to the sole point of their weight in proving the intention of the defendant in the crime for which he was on trial." What we have already written indicates that, under the peculiar facts of this case, the confession of defendant was admissible for other reasons; but, aside from that, no request was made by defendant for any instruction such as above indicated, and, as before shown, so far as defendant's intention is concerned, he frankly admitted, when on the stand as a witness for himself, that the homicide occurred when he was carrying out a formed purpose to commit a robbery, which, under section 74 of the Act of March 31, 1860, P. L. 382, 402, constitutes murder of the first degree.

The judgment appealed from is affirmed, the record to be remitted to the court below for purposes of execution.