STATE OF IOWA, Appellee, v. LOUIS B. HOFER, Appellant.

No. 46993.

JULY 29, 1947.

James E. Remley and Remley & Remley, all of Anamosa, for appellant.

Robert L. Larson, Attorney General, Charles H. Scholz, Assistant Attorney General, C. F. Shimanek, County Attorney, and Glen J. McLaughlin, of Anamosa, for appellee.

GARFIELD, J.—Defendant Hofer, age thirty-six, and one Larson were prisoners in the men's reformatory at Anamosa. Each morning they were taken in an automobile by John Hinz, foreman of the prison cheese factory, to work there. When the day's work was done Hinz returned the prisoners to the reformatory. They had planned to escape while Hinz was returning them to prison on June 12th. The plan was that Hofer was to ride in the rear seat of the automobile, would strike Hinz in the head with a hammer, and Larson, in the front seat, would then drive the car.

Defendant concealed a hammer on his person when he got in the automobile and a little later at a signal from Larson struck Hinz on the top of the head with the hammer. Larson then struck Hinz in the face with his fist and yelled to defendant to "hit him harder." Hofer then struck Hinz in the head a second and harder blow with both hands upon the hammer handle. Blood came streaming down Hinz' face. The car was stopped and the prisoners moved Hinz into the rear seat, where defendant held him down. Hinz started to fight back and Hofer again hit him in the head at least once or twice with the hammer. However, Hinz managed to open a door to the car and get out while the prisoners drove on. Hinz was picked up by a passing motorist and taken to a hospital, where he died the following evening, without regaining consciousness, from a fractured skull caused by the hammer blows.

About forty-six hours later defendant and Larson were apprehended some fifty miles away and returned to the reformatory. On June 17th a county attorney's information was filed against Hofer charging him with murder in the first degree. On the same day defendant appeared for arraignment, was informed of his right to counsel, and stated he had no counsel and no funds with which to procure one. The court then appointed James E. Remley, Esq., an able and experienced attorney, to represent Hofer. On June 19th, defendant pleaded not guilty. Trial commenced on September 30th. The jury returned a verdict of guilty of first-degree murder and, pursuant to Code section 690.5, directed the punishment be death. (All Code references are to the Code of 1946.) Defendant was accordingly sentenced to be hanged.

■ I. Defendant contends the trial court was without jurisdiction because no order for a bench warrant was made and no warrant issued. We hold the contention without merit.

Upon the filing of an indictment or county attorney's information against a defendant not in custody nor under bail it is the duty of the judge to order a bench warrant to issue for his arrest. Code sections 774.2, 769.12. We assume, without deciding, Hofer was "not in custody," within the above statute, although he was a prisoner in the reformatory. The record does

not show any order for, nor issuance of, a bench warrant. Nor was there any order, so far as shown, under Code section 774.10, for the production of defendant for trial. However, defendant was arraigned, entered a plea of not guilty, and was present in person and with counsel throughout the proceedings below. He did not there raise the question presented here.

This contention goes merely to the question of jurisdiction of defendant's person—to the manner of bringing him before the court. Such a contention must be presented to the trial court and cannot be first raised upon appeal. It is waived by pleading not guilty and going to trial. It is unlike questions that go to jurisdiction of the subject matter, which cannot be waived but may be raised at any stage of the proceeding. 22 C. J. S., Criminal Law, sections 161, 162; 14 Am. Jur., Criminal Law, section 214; State v. Melvern, 32 Wash. 7, 72 P. 489, 491; State v. Warner, 165 Minn. 79, 205 N. W. 692; Ford v. United States, 273 U. S. 593, 606, 47 S. Ct. 531, 535, 71 L. Ed. 793, 799, 800, and authorities cited; Hollibaugh v. Hehn, 13 Wyo. 269, 79 P. 1044, 1045, 1046. See, also, State v. Ray, 50 Iowa 520; State v. Kinney, 41 Iowa 424.

We pointed out in Hottle v. District Court, 233 Iowa 904, 906, 907, 11 N. W. 2d 30, 32, that the statements now relied upon by defendant from State v. Judkins, 200 Iowa 1234, 1236, 206 N. W. 119, 120, are dicta. Further, in the Judkins case the accused had never appeared personally in court, had not been arraigned or entered a plea, nor had he been present throughout a trial. All of these matters, absent in the Judkins case, are shown here.

██ II. Defendant contends Exhibits 4 and 5, which the State alleges are confessions, were involuntary as a matter of law. The trial court submitted to the jury the question whether either exhibit was involuntary. We think this was proper.

Defendant was apprehended about midafternoon on June 14th by several peace officers. He was dirty, very tired and worn out. About 4:30 p.m., at the direction of the warden of the reformatory, Hofer left the place of his capture in an automobile, accompanied by three employees of the reformatory. About that

time the warden suggested to two state investigators or "agents" who were at the scene that they return to the prison and see if Hofer would give them a statement. The agents arrived at the reformatory about the time defendant and his custodians did.

Hofer was permitted to change clothes—those he had been wearing were muddy—and was taken to a room in the reformatory used by the board of parole to interview prisoners. He was not handcuffed nor otherwise shackled. He looked a little stronger than when apprehended. A uniformed guard was in the room and the employee who sat in the car with defendant on the return trip was there part of the time. The two investigators were present and the warden was there soon after the interview, which lasted an hour and a half to two hours, commenced. The state agents questioned defendant and one of them took down on a typewriter what Hofer said. Defendant read over the statement and signed it and it was received in evidence as Exhibit 4.

The two investigators, the warden, and the employee who sat with defendant on his return to the reformatory testified to the circumstances under which Exhibit 4 was given. The writing itself asserts it was made of Hofer's own free will, no threats or promises were made to him by the state agents to whom the statement was given, Hofer had read the statement, it is true, and signed it "knowing it may be used against me in court."

The testimony is that the agents told defendant who they were, that defendant could refuse to make a statement if he saw fit and anything said by him might be used against him in court, Hofer said he was ready and talked freely, no threats or promises were made him. It does not appear defendant was advised of what he now refers to as his "right to counsel," although one agent says "I believe we did, however, I wouldn't want to state that we did."

The employee who sat with Hofer on his return to the reformatory testifies he and his two fellow employees talked to defendant during the fifty-mile trip. To these men Hofer told about the same story that appears in Exhibit 4 but in less detail. Three days after Exhibit 4 was made defendant was

again questioned in the same board of parole room by the two state agents. An additional written statement was given by defendant at this time. It contains substantially the same statements as those in Exhibit 4 above referred to which purport to show it was voluntarily given and reiterates that Exhibit 4 is true and correct.

Both agents testify the later statement was made without any threats or promises to defendant; one of them says Hofer was told "he didn't have to make a statement if he didn't want to," and the other testifies defendant was advised of his right to counsel and that the additional statement might be used against him but Hofer did not manifest his desire to have counsel. There is no evidence defendant was tired or worn out on the 17th. This later statement was received in evidence as Exhibit 5.

It is the rule in this state that where, as here, a written statement by the accused purports to be freely given it is prima facie voluntary and the burden rests upon him to show the contrary. State v. Bisanti, 233 Iowa 748, 751, 9 N. W. 2d 279, 281, and cases cited; State v. Boston, 233 Iowa 1249, 1253, 11 N. W. 2d 407, 409. Here no testimony was offered in defendant's behalf and the State's evidence tending to show Exhibits 4 and 5 were voluntary is without contradiction. Defendant was clearly not entitled to have the exhibits excluded on the ground they were involuntary as a matter of law. State v. Heinz, 223 Iowa 1241, 275 N. W. 10, 114 A. L. R. 959; State v. Townsend, 191 Iowa 362, 366, 182 N. W. 392; State v. Bennett, 143 Iowa 214, 220, 121 N. W. 1021, and cases cited.

■ That Exhibits 4 and 5 were given when defendant was a prisoner does not render them inadmissible. State v. Kelso, 198 Iowa 1046, 200 N. W. 695, and cases cited; State v. Westcott, 130 Iowa 1, 6, 104 N. W. 341; State v. Storms, 113 Iowa 385, 391, 85 N. W. 610, 86 Am. St. Rep. 380; Wilson v. United States, 162 U. S. 613, 623, 16 S. Ct. 895, 40 L. Ed. 1090, 1096; 20 Am. Jur., Evidence, section 498; 22 C. J. S., Criminal Law, section 819.

It is claimed defendant was fraudulently induced to make Exhibits 4 and 5 because, it is said, the officers did not tell him

Hinz was dead nor that defendant might be prosecuted for murder. It does not clearly appear Hofer knew, at least when Exhibit 4 was made, Hinz had been killed, although there is evidence he told an officer soon after he was apprehended, "It was all my own planning, I did it and I suppose I will have to burn for it."

But even if defendant was not informed and did not know when Exhibits 4 and 5 were made that Hinz had been killed, this would not render them inadmissible. Even the use of artifice, fraud, or deception to obtain a confession does not render it inadmissible if the means employed are not calculated to procure an untrue statement. 22 C. J. S., Criminal Law, section 827; 20 Am. Jur., Evidence, section 519; State v. Storms, 113 Iowa 385, 391, 85 N. W. 610, 86 Am. St. Rep. 380; State v. Westcott, 130 Iowa 1, 6, 7, 104 N. W. 341.

That defendant was not represented by counsel when Exhibits 4 and 5 were made nor told of any right he may have had to consult counsel does not affect the admissibility of the exhibits. State v. Heinz, 223 Iowa 1241, 1253, 275 N. W. 10, 114 A. L. R. 959, 970; State v. Neubauer, 145 Iowa 337, 340, 124 N. W. 312; Wilson v. United States, 162 U. S. 613, 624, 16 S. Ct. 895, 40 L. Ed. 1090, 1096, 1097; 20 Am. Jur., Evidence, section 503; 22 C. J. S., Criminal Law, section 822; annotation 23 A. L. R. 1382, 1387.

That Exhibit 4 was taken when defendant was fatigued would not render it inadmissible. Further, defendant's tired condition no longer existed when Exhibit 5 was made three days later and defendant again declared Exhibit 4 was freely and truthfully made. Even where a confession is involuntarily obtained a later confession at a time when the improper influences are not in operation is admissible. 20 Am. Jur., Evidence, section 487; 22 C. J. S., Criminal Law, section 817d(6); State v. Foster, 136 Iowa 527, 530, 114 N. W. 36; State v. Westcott, 130 Iowa 1, 6, 104 N. W. 341.

III. When the State started to question Warden Davis about Exhibit 4 the court granted defendant's request that testimony be taken in the jury's absence on the question whether

it was voluntary. Davis was then examined and cross-examined on this issue. The court then ruled there was sufficient prima facie showing the exhibit was voluntarily made and denied defendant's request to introduce further evidence on the question in the jury's absence. We think this was not prejudicial error.

The authorities are not agreed as to the duty of the court to hear evidence offered by accused on a preliminary inquiry into the voluntary character of a confession. 20 Am. Jur., Evidence, section 540; annotation 102 A. L. R. 605, 616. This lack of uniformity seems in part due to the fact that in some jurisdictions the voluntary nature of a confession is a question for the court and in others is for the jury. See 20 Am. Jur., Evidence, section 533; annotation 85 A. L. R. 870.

We are committed to the rule that where the evidence is in conflict, or the court is in doubt on the question, it should be left to the jury under proper instructions. State v. Johnson, 210 Iowa 167, 171, 230 N. W. 513, and cases cited; State v. Plude, 230 Iowa 1, 6, 7, 296 N. W. 732, 735; annotation 85 A. L. R. 870, 887. Of course, if it clearly appears a confession was involuntarily obtained it is the court's duty to exclude it. Id.

Under the procedure which prevails in this state there seems to be no valid reason why the court is bound to hear testimony for defendant on the preliminary examination after it is apparent the question of the voluntary character of a confession is one for the jury and not the court. The ruling below finds support in 20 Am. Jur., Evidence, section 540; Commonwealth v. Weiss, 284 Pa. 105, 130 A. 403; Commonwealth v. Aston, 227 Pa. 106, 75 A. 1019, 1020; State v. Wells, 35 Utah 400, 100 P. 681, 683, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631; Wilburn v. State, 141 Ga. 510, 81 S. E. 444; Irby v. State, 95 Ga. 467, 20 S. E. 218.

The court should permit cross-examination of the witnesses called by the State on the preliminary inquiry. 20 Am. Jur., Evidence, section 534. This is substantially the holding in State v. Fidment, 35 Iowa 541. Here such right was accorded defendant.

830

It is generally held the trial court has considerable discretion as to the extent of such a preliminary inquiry as here involved. 20 Am. Jur., Evidence, section 534; 22 C. J. S., Criminal Law, section 836; annotation 102 A. L. R. 605, 622. We think no such abuse of discretion appears here as to justify a reversal.

But if the court's ruling could be called error, it was without prejudice. It is not shown what evidence defendant proposed to offer. Of course, he was entitled to produce before the jury any competent testimony tending to show Exhibits 4 or 5 were involuntary. As stated, none was offered. No facts were proved or offered to be proved, and there is no indication a showing could have been made which would have rendered the exhibits inadmissible. Under similar circumstances like rulings have been held not to be prejudicial error. State v. Thomas, 250 Mo. 189, 157 S. W. 330; People v. Miller, 135 Cal. 69, 67 P. 12; People v. Northcott, 209 Cal. 639, 289 P. 634, 70 A. L. R. 806, 814, 815; 20 Am. Jur., Evidence, section 534; annotation 102 A. L. R. 605, 616, n20.

IV. Exhibit 4 states "I have served time before this and that was in Ind." It also states that during the time (forty-six hours) defendant and Larson were at large they broke into a railroad ticket office and stole something over $2 and a little later stole an automobile which they drove until they "wrecked it or blew out some tires." On defendant's motion these statements were stricken and withdrawn from the jury's consideration. The jury was also admonished when the ruling was made and again in the court's instructions, both specifically and generally, not to consider these statements. The transcript shows the county attorney, in reading Exhibit 4 to the jury, omitted the stricken portions. However, defendant complains here that the entire exhibit was taken to the jury room when the jury retired.

The record does not show defendant objected to the taking of Exhibit 4 to the jury room nor requested the stricken portions of the exhibit be marked or obliterated. At least in the absence of such objection or request, sending the exhibit to the jury room under the directions given was not error. The stricken

portions are inseparable parts of the confession, if it is such, of the crime charged. See 20 Am. Jur., Evidence, section 489; 22 C. J. S., Criminal Law, section 820; annotation 2 A. L. R. 1017, 1029. We are not justified in assuming the jury disregarded the court's admonitions not to consider the parts stricken.

In reaching this conclusion we assume, without deciding, the court properly excluded the parts of Exhibit 4 relating to the breaking and entering and the theft of an automobile during the time defendant and his confederate were attempting to escape. It may be the excluded portions involved circumstances so immediately connected with the crime charged they, too, were admissible, even though they incidentally showed the commission of other crimes. See State v. Grimm, 221 Iowa 652, 266 N. W. 19, and cases cited; State v. Mickle, 199 Iowa 704, 708, 202 N. W. 549.

In this connection we may observe, without committing ourselves thereto, there is respectable authority that in a trial under a statute similar to Code section 690.2, which leaves to the jury the question whether punishment shall be death or life imprisonment, evidence of other crimes contained in a written confession is admissible as an aid to the jury in fixing the punishment. Commonwealth v. Parker, 294 Pa. 144, 143 A. 904, 906, 907; Commonwealth v. Mellor, 294 Pa. 339, 144 A. 534, 536.

V. Defendant complains that the court in instructing the jury and throughout the trial treated Exhibits 4 and 5 as confessions when, it is said, they are not such. The instructions refer to the exhibits as "alleged confessions" and deal with the requirements that a confession be voluntary and be corroborated by other evidence. We do not find the court or the prosecuting attorney referred to the exhibits as confessions throughout the trial, although this was done by defendant's counsel.

A confession is an admission or acknowledgment of guilt of the very offense charged and, as some authorities hold, may consist of an admission of the essential facts constituting such crime. But admissions which do not amount to a confession are receivable in evidence. State v. Cook, 188 Iowa 655, 660, 661, 176 N. W. 674; State v. Norton, 227 Iowa 13, 15, 286

N. W. 476; State v. Gallagher, 236 Iowa 123, 127, 16 N. W. 2d 604, 606. We shall not determine whether Exhibits 4 and 5 are confessions or merely admissions.

We might ignore this contention because it was not raised below. Defendant excepted to the instructions on confessions but not on the ground it was error to refer to Exhibits 4 and 5 as confessions. See State v. Woodmansee, 212 Iowa 596, 621, 233 N. W. 725, and cases cited; State v. Dunne, 234 Iowa 1185, 1187, 15 N. W. 2d 296, 298, and authorities cited; State v. Mauch, 236 Iowa 217, 226, 17 N. W. 2d 536, 541. However, we are disposed to consider the question.

▆ The instructions do not define a confession and there is no indication the jury knew the legal definition of the term is an admission of guilt of the very offense charged. It was to defendant's advantage to instruct that Exhibits 4 or 5 could not be considered if involuntary and that a confession will not warrant a conviction unless accompanied by other proof the offense was committed. Defendant was therefore not prejudiced by the use of the term confession rather than admission in the instructions. State v. Davis, 212 Iowa 131, 134, 235 N. W. 759.

▆ VI. Defendant complains of instruction 13, which states in substance: A confession cannot be considered unless it was made voluntarily and was not procured by undue influence in the way of either a promise of advantage or a threat of harm; defendant claims Exhibits 4 and 5 were not voluntarily made; if the jury finds either of these exhibits was procured by the promise of advantage or threat of any harm, then it would not be voluntary and should be given no consideration, but if it finds either exhibit was voluntarily made by defendant without promise of advantage or threat of harm it may be considered.

It is argued the instruction says Exhibits 4 and 5 were voluntary if made without promise of advantage or threat of harm and eliminates the fraud defendant contends was used in procuring the exhibits, the fact he was a prisoner, and also defendant's physical and mental condition when Exhibit 4 was made. We have held in Division II the law on these questions is not as defendant contends.

Instruction 13 appears to be patterned after an instruction approved in State v. Bennett, 143 Iowa 214, 218–220, 121 N. W. 1021. See, also, State v. Thomas, 193 Iowa 1004, 1011, 188 N. W. 689, and cases cited. While the instruction is perhaps not as clear as it might be, we think it is not vulnerable to defendant's attack upon it. The instruction states and the jury could scarcely have failed to understand the exhibits were to be considered only if made voluntarily. At least, in the absence of request for a more specific instruction, No. 13 does not constitute reversible error. On the duty to request more explicit instructions, see State v. Griffin, 218 Iowa 1301, 1312, 254 N. W. 841, and cases cited.

We may observe that instruction 13, to defendant's advantage, does not say that a written statement by a defendant which purports to be freely given is prima facie voluntary and the burden to show the contrary rests upon him. See State v. Boston, 233 Iowa 1249, 1253, 11 N. W. 2d 407, 409, and cases cited.

 VII. Complaint is made of instruction 7, which states in substance: *Malice aforethought is a fixed purpose or design to do some physical harm to another existing prior to the act complained of;* it need not be shown to have existed for any length of time before, but requires only such deliberation as makes a person appreciate and understand at the time the act is committed its nature and probable consequences as distinguished from an act done in the heat of passion; it is sufficient if such purpose was formed before and continued to exist at the time of the injury; malice includes not only hatred and ill will but also any other unlawful or unjustifiable motive which inspires one to injure another and it may be inferred from the willful doing of an unlawful act, without just provocation or excuse, with intent to injure the person of another; it may mean simply a vicious and wanton disregard of another's rights; malice may be express or implied; express malice indicates a wicked mind; *malice may be implied from the unlawful use of a deadly weapon in a manner calculated to take the life of another.* No objection is made to the portions we have italicized. We find no error in the remainder of the instruction.

834

As to the time element in malice aforethought, it is sufficient if malice existed prior to the act—the length of time it existed is not material. State v. Decklotts, 19 Iowa 447, 449; 40 C. J. S., Homicide, section 15; 41 C. J. S., Homicide, section 357c; 26 Words and Phrases, Perm. Ed., 200, 201. In instructions on this subject frequently the word "particular" precedes the expression "length of time" in the clause which immediately follows the first italicized portion, but its omission is not error. State v. Dong Sing, 35 Idaho 616, 208 P. 860, 862; 1 McClain on Criminal Law, section 329.

That malice is correctly defined and explained in the instruction, see State v. Emery, 236 Iowa 60, 64, 65, 17 N. W. 2d 854, and authorities cited; State v. Woodmansee, 212 Iowa 596, 619, 233 N. W. 725, and cases cited; State v. Troy, 206 Iowa 859, 865, 220 N. W. 95; 40 C. J. S., Homicide, section 14; 26 Am. Jur., Homicide, sections 40, 41; 26 Words and Phrases, Perm. Ed., 199, 200.

VIII. Instruction 8 defines willful, deliberate, and premeditated. Defendant challenges especially the last paragraph of the instruction, which states that for a killing done with malice aforethought to be willful, deliberate, and premeditated does not mean the killing must have been conceived or intended for any particular length of time before the act is done; *the will or purpose to do it, the deliberation and premeditation, and the killing may follow each other as rapidly as successive impulses of thought of the human mind.* We have frequently approved the first of these two clauses. State v. Powell, 237 Iowa 1227, 1237, 1238, 24 N. W. 2d 769, 775, 776, and cases cited; State v. Heinz, 223 Iowa 1241, 1259, 275 N. W. 10, 114 A. L. R. 959; State v. Matheson, 220 Iowa 132, 137, 138, 261 N. W. 787; State v. Griffin, 218 Iowa 1301, 1307, 1308, 254 N. W. 841.

The portion of instruction 8 we have italicized must, of course, be considered in connection with the rest of the instruction (the first three paragraphs of No. 8 are summarized in Division IX hereof) and also with instruction 10 on the same subject (to which defendant also objects). No. 10 is obviously

patterned after an instruction approved in State v. McPherson, 114 Iowa 492, 496–498,. 87 N. W. 421. When so considered, the italicized portion of instruction 8 does not constitute reversible error.

We have said several times it is sufficient if there was deliberation and premeditation immediately before the fatal injury was inflicted though it may have existed but for a moment or an instant. State v. Matheson, supra; State v. Fuller, 125 Iowa 212, 213, 100 N. W. 1114; State v. McPherson, supra, and cases cited. See, also, 26 Am. Jur., Homicide, section 42. And there is ample authority for the inclusion of the italicized portion of No. 8 in an instruction on this subject. People v. Suesser, 142 Cal. 354, 75 P. 1093, 1097; Wickham v. People, 41 Colo. 345, 93 P. 478, 481; State v. Dong Sing, 35 Idaho 616, 208 P. 860, 861, 862; Koerner v. State, 98 Ind. 7, 8, 9; State v. Prolow, 98 Minn. 459, 108 N. W. 873; State v. Mc-Daniel, 94 Mo. 301, 7 S. W. 634. See, also, Perugi v. State, 104 Wis. 230, 80 N. W. 593, 595–598, 76. Am. St. Rep. 865; 27 Words and Phrases, Perm. Ed., 845–847.

IX. Defendant requested instructions to the effect a specific intent to kill is indispensable to murder in the first degree. These were refused as having been given in substance. Defendant is not entitled to a review of this ruling because only a general exception, without specifying any grounds, was taken to such refusal. State v. Boston, 233 Iowa 1249, 1254, 11 N. W. 2d 407, 410, and cases cited. However, in view of its importance, we prefer to consider the question.

We have said a specific intent to kill is indispensable to first-degree murder. State v. Johnson, 211 Iowa 874, 879, 234 N. W. 263, and cases cited. And the essential elements of the crime have sometimes been stated as malice aforethought, deliberation, premeditation, and specific intent to kill. State v. Powell, 237 Iowa 1227, 1237, 24 N. W. 2d 769, 775; State v. Wilson, 234 Iowa 60, 91, 11 N. W. 2d 737, 752. While these statements are correct, Code section 690.1 defines murder as the killing of a human being with malice aforethought, express or implied, and section 690.2 provides that murder which is

willful, deliberate, and premeditated is murder in the first degree. The court's instructions define both first and second degree murder in the language of the statutes and explain the meaning of the statutory terms.

"Willful" as used in section 690.2 means intentional and not accidental. Indeed it has that meaning both according to the dictionaries and in the law of homicide. State v. Windahl, 95 Iowa 470, 473, 64 N. W. 420; State v. Townsend, 66 Iowa 741, 742, 24 N. W. 535; 40 C. J. S., Homicide, section 33; 45 Words and Phrases, Perm. Ed., 198, 199. The court instructed accordingly.

Instruction 8 states that "willful" means the act was the result of the conscious will of the perpetrator, was of purpose, intentional and not accidental; "deliberate" means the act was the result of a purpose formed after weighing the considerations for and against the doing of the act; "premeditated" means the act was thought of beforehand and done in pursuance of a prior intention or plan. Another instruction refers to "willful intent, deliberation and premeditation," to "fixed design or determination to maliciously kill distinctly framed in the mind of the slayer," and to "willful, deliberate and premeditated design or purpose with malice aforethought to take the life of said deceased." Thus the jury was plainly told the killing must be intentional to constitute first-degree murder. This sufficiently covered the thought of defendant's requested instructions.

In enumerating, in State v. Powell and State v. Wilson, supra, the essential elements of first-degree murder to include "a specific intent to kill," such expression is used as substantially the equivalent of "willful." It is unnecessary to instruct that the intent to kill must be "specific" in order to constitute first-degree murder. State v. Berlovich, 220 Iowa 1288, 1291, 263 N. W. 853. See, also, as bearing on this claim of error, State v. Gray, 116 Iowa 231, 236, 89 N. W. 987; State v. Perigo, 70 Iowa 657, 659, 28 N. W. 452; State v. Shelton, 64 Iowa 333, 337, 20 N. W. 459.

X. On cross-examination defendant asked witness Harbit, who sat with Hofer on the return trip to the reforma-

tory, if at any time during the conversation he had with Hofer, he expressed any ill will toward deceased. The State's objection to this question was sustained. It should have been overruled. Perhaps the objection was sustained on the theory ill will toward deceased was not a necessary element of the crime charged. Nevertheless, the jury was entitled to this information, if for no other reason, as an aid in fixing the penalty. However, the ruling was without substantial prejudice since about the same answer defendant sought to elicit from Harbit appears without dispute in Exhibit 4 put in evidence by the State. That exhibit quotes defendant as having told the officers who talked with him:

"Mr. Hinz * * * was good to me while I was working with him and it was not because I did not like him that I hit him with the hammer."

See State v. Sedig, 235 Iowa 609, 616, 16 N. W. 2d 247, 251, and cases cited.

XI. Finally, defendant contends he was denied a fair trial principally because of the alleged errors heretofore considered and the claim the instructions as a whole were unfair. The record does not support the contention. We find no reversible error nor unfairness in the instructions. The only requested instructions were those on specific intent to kill considered in Division IX hereof. If defendant desired more explicit instructions he should have requested them. State v. Schenk, 236 Iowa 178, 194, 195, 18 N. W. 2d 169, 177, and cases cited; State v. Hessenius, 165 Iowa 415, 433, 146 N. W. 58, L. R. A. 1915A, 1078.

Different parts of the instructions were advantageous to defendant. We have referred in Division VI to the failure to instruct that a written statement by an accused which purports to be freely given is prima facie voluntary and the burden rests upon him to show the contrary. We may also observe the instructions, properly but unnecessarily, state the information is but the charge made against defendant and is no evidence of guilt and that the fact defendant refrained from testifying

should not be permitted to weigh in the slightest degree against him nor should any presumption of guilt be indulged in because thereof.

That defendant was found guilty and the death sentence imposed does not indicate there was not a fair trial. State v. Brewer, 218 Iowa 1287, 1299, 254 N. W. 834. We should not interfere unless there is some legal reason for so doing. State v. Griffin, 218 Iowa 1301, 1312, 254 N. W. 841; State v. Olander, 193 Iowa 1379, 186 N. W. 53, 29 A. L. R. 306; State v. Pavey, 193 Iowa 985, 992, 188 N. W. 593.

Some other contentions are made. We have considered them and find no error.

The judgment is—Affirmed.

OLIVER, C. J., and BLISS, HALE, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.