# IN THE COURT OF APPEALS OF IOWA

No. 18-0575
Filed May 1, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ABRAHAM ROBERTS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.

        A defendant appeals his conviction for murder in the first degree.

**AFFIRMED.**

        Mark C. Smith, State Appellate Defender, (until withdrawal) and Robert P.

Ranschau, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.

        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A Polk County jury found Abraham Roberts guilty of first-degree murder in the shooting death of his live-in girlfriend, Agnes Yarlee. On appeal, Roberts challenges the State's proof he acted with malice aforethought and that the shooting was willful, premeditated, and carried out with a specific intent to kill. Because the State presented ample evidence supporting these elements, we affirm the jury's verdict.

## I.  Facts and Prior Proceedings

The jury heard testimony Roberts shot Yarlee five times as she sat on the couch in the apartment they shared with their infant daughter, Yarlee's three older children, and other family members. Their five-month-old was sitting in a bouncy chair at her mother's feet when Roberts repeatedly fired the nine-millimeter Smith & Wesson handgun. No bullets hit the baby, but they struck Yarlee in the knee, chest, and skull. The head wound was fatal.

Before the shooting, Roberts complained the apartment was a mess. Yarlee purportedly responded, "my kids ain't here to clean the house." Then Roberts, Yarlee, and Yarlee's seventy-nine-year-old mother argued so loudly Yarlee's three children could hear their raised voices outside the apartment building. During the argument, Roberts shoved the elderly woman to the ground as he moved to the bedroom to grab his gun. Scared to go inside, eleven-year-old C.Y. recalled standing at the open apartment door with her eight- and nine-year-old brothers behind her. C.Y. saw Roberts tap his leg before he lifted the gun and shot her mother. C.Y. told the jury her mother didn't have time to react: "He

didn't give her a chance. He just went boom, boom, boom, boom, boom." C.Y. then ushered her grandmother from the house and called 911.

Roberts left the apartment before the police arrived. Responding officers discovered Yarlee's body on the couch in a large pool of blood. After searching the apartment the next day, officers found the handgun under dirty clothes in the laundry hamper. Authorities eventually arrested Roberts in International Falls, Minnesota, near the Canadian border.

The State charged Roberts with murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2(1) (2017). A jury heard the case in January 2018. Yarlee's mother and daughter both offered eyewitness testimony. They testified Roberts was angry, and the grandmother remembered Roberts telling Yarlee, "I will kill you," before he pulled the trigger.

After the State's case in chief, defense counsel moved for judgment of acquittal on the charges of murder in the first and second degree and asked the district court to submit the case to the jury only on the lesser-included offenses of voluntary and involuntary manslaughter. The court overruled the motion.

Roberts took the stand in his own defense. He testified to drinking more than half a bottle of gin the day of the shooting. He acknowledged arguing with Yarlee at the apartment but alleged she was the aggressor, they wrestled over the gun, and "it automatically went off."[1] According to his testimony, after the first shot,

---

[1] Roberts did not raise an intoxication or justification defense at trial, nor does he mention those affirmative defenses on appeal.

he didn't remember anything until the next morning.[2]  He told the jury after waking up at a hotel, he was "lost" and "confused" and just kept driving until he was stopped by the border patrol.

The jury found Roberts guilty as charged.  He appeals the judgment entered on that verdict, alleging the district court erred in denying his motion for judgment of acquittal.

## II.     Scope of Review

We review the district court's assessment of the sufficiency of the evidence for correction of legal error.  *State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003).  We will not displace a jury verdict if substantial evidence supports it.  *Id.* Evidence qualifies as "substantial" if a rational trier of fact could apply it to the elements of the offense to find the accused guilty beyond a reasonable doubt.  *Id.* We view the evidence in the light most favorable to the State, entertaining all legitimate inferences we can fairly and reasonably deduce from the record.  *Id.*  We consider both inculpatory and exculpatory evidence.  *Id.*   Evidence is not substantial if it amounts to only "suspicion, speculation, or conjecture."  *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998).

## III.    Analysis

The marshaling instruction on first-degree murder required proof beyond a reasonable doubt of the following elements:

> 1.  On or about the 15th day of April, 2017, the defendant shot Agnes Yarlee.
> 2.  Agnes Yarlee died as a result of being shot.

---

[2] Roberts, who came to the United States as a refugee from Liberia, testified he experienced a similar "amnesia event" when he was running from a violent uprising in his home country.

        3.  The defendant acted with malice aforethought.
        4.  The defendant acted willfully, deliberately, premeditatedly
and with a specific intent to kill Agnes Yarlee.

Roberts does not dispute the State's satisfaction of the first and second elements. He limits his argument to the third and fourth elements, contending the prosecution did not prove beyond a reasonable doubt he "acted with malice aforethought, premeditation or acted willfully, deliberately, or with the specific intent to kill." He points to differing witness accounts of the number of shots fired and suggests the variation "could indicate that the gunshots occurred in rapid succession and in the heat of the moment."

We turn first to the question of whether Roberts shot Yarlee with malice aforethought. Iowa case law defines this state of mind as "a fixed purpose or design to do some physical harm to another" harbored by the accused before taking action. *State v. Serrato*, 787 N.W.2d 462, 469 (Iowa 2010) (quoting *State v. Gramenz*, 126 N.W.2d 285, 290 (Iowa 1964)). The State does not need to prove the fixed purpose to do harm existed for any particular length of time. *Id.* Case law describes the vital interval "as such deliberation as makes a person appreciate and understand at the time the act is committed its nature and probable consequences as distinguished from an act done in the heat of passion." *State v. Hofer*, 28 N.W.2d 475, 482 (Iowa 1947).

The State presented eyewitness testimony Roberts was "mad" when he entered the living room with a handgun and shot Yarlee repeatedly at close range. The jurors were entitled to believe the forensic evidence showing Roberts fired all five shots at a downward trajectory toward the victim and disbelieve his version that the pair were struggling over the weapon when it discharged. *See State v.*

*Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (reiterating "the very function of the jury" is to "sort out the evidence" and "place credibility where it belongs"). A criminalist testified for the State the handgun used in the killing would "only fire one time for each trigger pull." Even if those pulls came in rapid succession—as Roberts suggests on appeal—his use of a deadly weapon in a dangerous manner permitted the jury to infer he acted with malice aforethought. *See State v. Green*, 896 N.W.2d 770, 781 (Iowa 2017); *State v. Woodmansee*, 233 N.W. 725, 736 (Iowa 1930). The State offered substantial evidence in support of the malice-aforethought element.

We turn next to the question of whether Roberts acted willfully, deliberately, premeditatedly, and with a specific intent to kill Yarlee. These states of mind "must exist before and at the time" of the killing. *State v. Wilson*, 11 N.W.2d 737, 754 (Iowa 1943). "But the inception of their existence need be only but an instant before the fatal blow." *Id.* "Willfully," as used in Iowa's murder statute, means intentionally and not accidentally. *Hofer*, 28 N.W.2d at 483. Deliberately means "the act was the result of a purpose formed after weighing the considerations for and against the doing of the act." *Id.* To premeditate means "to think or ponder upon the matter before acting." *Buenaventura*, 660 N.W.2d at 48. Like malice aforethought, premeditation need not "exist for any particular length of time." *Id.* The State can prove premeditation by three categories of evidence: (1) planning, (2) motive, or (3) the nature of the killing. *State v. Helm*, 504 N.W.2d 142, 146 (Iowa Ct. App. 1993). Finally, specific intent means the offender "subjectively desired the prohibited result"—in this case, Yarlee's death. *See State v. Benson*, 919 N.W.2d 237, 244 (Iowa 2018).

The eyewitnesses dispelled any notion the shooting was accidental rather than intentional. But even without their testimony, the number and location of the gunshot wounds revealed the willful nature of Roberts's actions. Likewise, "the record sufficiently established [Roberts's] opportunity to premeditate and deliberate before firing bullets into [Yarlee's] body at close range." *See State v. Wilkens*, 346 N.W.2d 16, 20 (Iowa 1984).

Finally, although Roberts casts doubt on the credibility of the grandmother's recollection he explicitly threatened to kill Yarlee, the jurors were free to believe her trial testimony. *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) ("The jury members were free to give [witness] testimony such weight as they thought it should receive." (citing *State v. Schrier*, 300 N.W.2d 305, 309 (Iowa 1981))). And even without that threat, Roberts's conduct exuded an intent to kill. Roberts shot Yarlee in the chest and top of her skull—both locations on the body vulnerable to mortal injuries. He then hid the handgun in the hamper before fleeing the apartment. His actions support the jury's finding he subjectively desired to cause Yarlee's death. Viewing the record in the light most favorable to the guilty verdict, we find substantial evidence to support his conviction for murder in the first degree.

**AFFIRMED.**