# IN THE COURT OF APPEALS OF IOWA

No. 21-1742
Filed October 19, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**PAUL ROOSEVELT BELK,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

        Paul Belk appeals his conviction for second-degree murder. **AFFIRMED.**

        R. Ben Stone of Parrish Kruidenier Bunn Gentry Brown Bergmann & Messamer, LLP, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Heard by Vaitheswaran, P.J., Ahlers, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**AHLERS, Judge.**

Paul Belk stabbed his mother to death and also stabbed his sister, causing injuries.[1]  The State charged him with first-degree murder for the attack on his mother, willful injury for the attack on his sister, and possession of marijuana.  He asserted defenses of insanity, diminished responsibility, and intoxication.

Following a bench trial, the district court found Belk failed to prove his insanity defense.  On the other hand, the court found that Belk's diminished responsibility and intoxication from marijuana use negated his ability to form the specific intent needed to find him guilty of first-degree murder and willful injury, so the district court acquitted Belk on those charges.  As those defenses do not apply to general-intent crimes, the district court found Belk guilty of the lesser-included offense of second-degree murder and possession of marijuana.  *See State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000) (holding the defenses of intoxication and diminished capacity are not available to a defendant charged with second-degree murder because those defenses only apply to specific-intent crimes and second-degree murder is a general-intent crime).  On appeal, Belk claims the district court erred in rejecting his insanity defense, there is insufficient evidence that he had malice aforethought to support the second-degree murder conviction, and his trial counsel was ineffective for failing to effectively cross-examine one of the State's witnesses.

---

[1] This case involves family members who share the last name Belk.  We will refer to Paul Belk as "Belk," while referring to other Belk family members by first name.

## I.   Factual Background

In April 2020, Belk planned to visit his sister, Susan, in Sioux City, but he requested she tell no one else he was visiting.  Upon arrival, Susan and her friend picked Belk up from the airport.  Belk asked both of them if they could get him a firearm.

Belk stayed at Susan's home that night.  The next day, Belk gave his sister permission to tell their mother that Belk was in town.  Later that day, Belk's mother and sister, Zoe, came over to Susan's apartment to see Belk.  Belk's sisters reported that Belk was acting strangely that day.  After the family sat down for dinner, Belk left the table and grabbed a knife from the kitchen.  Knife in hand, Belk threatened to stab Susan's cat.  Shortly after, Belk's threats turned toward his family, and he took their cell phones away from them.

Belk then lit a cigarette inside the apartment, making a point of telling his mother—who had a well-known rule against smoking inside—that there was nothing she could do about it.  He then instructed his mother and sisters to pile objects in the middle of the room.  There was no apparent rhyme or reason to the items he sought to gather, but Belk was very particular about what objects should be added to the pile.  At one point Belk forced his mother to remove her watch and place it on his wrist.  When his mother moved toward the pile at Belk's request to add a basket to the pile, Belk stabbed her.  He then stabbed Susan.  Susan and Zoe ran from the apartment to get help.  Belk then stabbed his mother repeatedly, causing her death.

**II.      Standard of Review**

Belk contends there is insufficient evidence supporting the district court's finding that (1) he was not legally insane at the time of the stabbing and (2) he had malice aforethought at the time of the stabbing.  We review sufficiency-of-the-evidence claims for correction of legal error.  *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020).  "We will uphold the verdict on a sufficiency-of-evidence claim if substantial evidence supports it."  *Id.*  In a bench trial, we review the district court's findings as we would a jury verdict, meaning we will affirm the verdict if supported by substantial evidence.  *State v. Weaver*, 608 N.W.2d 797, 803 (Iowa 2000).  "Evidence is substantial when 'a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt.'"  *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016) (quoting *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997)).

**III.     Analysis**

As noted, Belk raises three issues.  We address each in turn.

**A.      Insanity Defense**

Belk argues he was legally insane at the time of the stabbing.

> A person shall not be convicted of a crime if at the time the crime is committed the person suffers from such a diseased or deranged condition of the mind as to render the person incapable of knowing the nature and quality of the act the person is committing or incapable of distinguishing between right and wrong in relation to that act.

Iowa Code § 701.4 (2020).  The defendant has the burden to prove insanity by a preponderance of the evidence.  *State v. Buck*, 510 N.W.2d 850, 852 (Iowa 1994).  The district court found that Belk failed to establish he was legally insane at the time of the killing.  Belk challenges the sufficiency of the evidence supporting this

conclusion. In a sufficiency-of-the-evidence challenge, we are bound by fact findings that are supported by substantial evidence. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). In determining whether a verdict is supported by substantial evidence, we view the evidence in the light most favorable to the party with the burden of proof, including all legitimate inferences and presumptions that can be deduced from the evidence. *See id.* Our ultimate task is to determine whether the evidence supports the finding actually made, not whether it would support a contrary finding. *Id.*

The district court was presented with reports and heard testimony from both a psychiatrist and psychologist regarding Belk's mental state at the time of the stabbing. Both reviewed footage of Belk shortly after the stabbing and also met with Belk in person. The psychiatrist, hired by Belk, concluded that Belk has underlying schizophrenia and psychotic process, which at the time of the stabbing caused him to be incapable of distinguishing right from wrong. The forensic psychologist, hired by the State, concluded that Belk was likely feigning mental illness and he did have the capacity to distinguish right from wrong at the time of the stabbing. "When conflicting psychiatric testimony is presented to the fact finder, the issue of sanity is clearly for the fact finder to decide." *State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000). "When a case evolves into a battle of experts, we, as the reviewing court, readily defer to the district court's judgment as it is in a better position to weigh the credibility of the witnesses." *Id.* Here, the district court was confronted with the two competing conclusions from competent professionals. It was the court's role to determine which expert was more credible. The court's conclusion that Belk was sane at the time of the stabbing is supported by the

State's expert's testimony and additional evidence supporting that expert's conclusions. The additional evidence included the fact that Belk used multiple sharp objects to stab his mother to death; threatened the other people present that he would harm or kill them if they did not comply with his commands; directed his sisters to send their children to another room; and expressed concern that the police would be called and collected their phones, thus preventing any calls for help. These additional pieces of evidence support the State's expert's conclusions that Belk knew the nature and quality of his actions and was capable of distinguishing between right and wrong when he stabbed his mother. The district court's finding that Belk was not legally insane at the time of the stabbing was supported by substantial evidence. *See State v. Davis*, 951 N.W.2d 8, 19–20 (Iowa 2020) (noting "[s]anity is judged at the time of the offense," after-the-fact evidence of the defendant's actions can shed light on sanity at the time of the offense, and the question of sanity was a question for the fact finder when there was after-the-fact evidence and expert testimony that the defendant had a long history of methamphetamine abuse that can lead to "substance-induced psychosis").

Before leaving this issue, we address Belk's contention that the district court erred when it concluded that Belk suffered from psychosis at the time of the stabbing but that such psychosis was temporarily induced by his marijuana usage. In assessing this contention, we start with the principle that a temporary mental condition caused by voluntary intoxication from alcohol or drugs does not constitute a complete insanity defense. *See State v. Hall*, 214 N.W.2d 205, 207–08 (Iowa 1974). That said, "[e]xtensive alcoholism or drug addiction can of course

lead to a condition for which the defense of insanity might be raised." *State v. Collins*, 305 N.W.2d 434, 437 (Iowa 1981). When prolonged extensive use of a drug damages the brain and "settled or established" insanity results from such use, the insanity is treated the same as insanity from any other cause. *Id.* (quoting *State v. Booth*, 169 N.W.2d 869, 873 (Iowa 1969)). Belk argues that he suffers from a mental condition as a result of prolonged extensive drug use that has resulted in "settled or established" insanity rather than a temporary condition caused by voluntary drug use. The district court rejected this argument. The court applied *Booth*, *Hall*, and *Collins* to conclude that any inability of Belk to distinguish between right and wrong and to know the nature and quality of his actions was caused by episodic marijuana use near in time to the stabbing rather than from any settled or established insanity. This conclusion is supported by the fact that, both before and after the killing, Belk's mental condition stabilized to a baseline of sanity fairly rapidly whenever he was institutionalized and did not have access to illegal drugs.[2] Belk's rapid return to sane mental functioning when not using drugs negated his claim that he suffered from "settled or established" insanity that interfered with his ability to know right from wrong. The district court's conclusion that Belk's mental impairment was temporarily induced by his marijuana use is supported by substantial evidence, and it will not be disturbed on appeal.

For all these reasons, sufficient evidence supports the district court's conclusion that Belk failed to prove his insanity defense. We reject his challenge on that ground.

---

[2] Belk was admitted to a mental-health facility a couple of months before the stabbing and was held in jail immediately following the stabbing.

### B.     Malice Aforethought

Belk's next challenge is that he did not have the requisite mental state required to be found guilty of second-degree murder.  To prove second-degree murder, the State is required to prove malice aforethought.  *State v. Reeves*, 670 N.W.2d 199, 206–07 (Iowa 2003).  Belk contends there is not sufficient evidence that he possessed malice aforethought.

Malice aforethought means "*a fixed purpose or design to do some physical harm to another existing prior to the act complained of*."  *Id*. at 207 (quoting *State v. Hofer*, 28 N.W.2d 475, 482 (Iowa 1947)).  Malice does not need to be shown to have existed for any length of time before the act.  *Id*.  It is enough to show that "such purpose was formed and continued to exist at the time of the injury."  *Id*. (quoting *Hofer*, 28 N.W.2d at 482).  A permissive presumption of malice aforethought is allowed from the use of a deadly weapon.  *State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017).

In making his argument that there is insufficient evidence of malice aforethought, Belk largely repeats the arguments made in support of his insanity defense.  For the same reasons we rejected those arguments in the context of his insanity defense, we reject them on this challenge as well.  To the extent Belk was acting under temporary psychosis from his use of marijuana, it did not render him incapable of acting with general intent, which is the only intent element required to support a second-degree murder charge.  *See Artzer*, 609 N.W.2d at 531 (holding the defenses of intoxication and diminished capacity are not available to a defendant charged with second-degree murder because those defenses only

apply to specific-intent crimes and second-degree murder is a general-intent crime).

Without the defenses of diminished responsibility or intoxication available to him, Belk is left with the other evidence in the record, and that evidence provides ample proof of malice aforethought. Belk stabbed his mother at least fourteen times with a kitchen knife and kitchen shears, including multiple stabs to her head, face, neck, and back. Before stabbing her, Belk threatened the people in the room, ordered the small children out of the room, expressed concern about the police being called, and prevented the others from calling for help by taking their cell phones. This evidence was sufficient to establish that Belk acted with malice aforethought.

### C. Ineffective Assistance of Counsel

Belk's final claim is that his trial counsel rendered ineffective assistance by failing to adequately cross-examine his sister, Zoe. Iowa Code section 814.7 prevents us from deciding ineffective-assistance-of-counsel claims on direct appeal. This statute was upheld as constitutional by the Iowa Supreme Court. *State v. Tucker*, 959 N.W.2d 140, 154 (Iowa 2021). Though Belk acknowledges this, he asserts constitutional challenges to section 814.7 and asks that *Tucker* be overturned. Of course, we lack the authority to overturn controlling supreme court precedent, so we must reject Belk's constitutional challenge to section 814.7. *Bomgaars v. State*, 967 N.W.2d 41, 48 n.4 (Iowa 2021) (noting that lower courts in Iowa are not at liberty to anticipatorily overrule supreme court precedent); *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule

controlling supreme court precedent.").  Therefore, we cannot consider his claims of ineffective assistance of counsel.

**IV.  Conclusion**

Substantial evidence supports the district court's ruling that Belk failed to establish his insanity defense and that he acted with malice aforethought in killing his mother.  We are prohibited from addressing Belk's claims of ineffective assistance of counsel.  For these reasons, we affirm.

**AFFIRMED.**