## Commonwealth *v.* Kurutz, Appellant.

Argued April 24, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John Francis Goldsmith,* with him *Daniel L. Mc-Carthy,* for appellant, cited: Com. v. Brown, 264 Pa. 90; Com. v. Brown, 93 Pa. Superior Ct. 192; Com. v. Williams, 307 Pa. 139.

*M. C. Schrader,* with him *Wm. A. Frack,* Assistant District Attorney, and *Herbert F. Laub,* District Attorney, for appellee, cited: Com. v. Garramone, 307 Pa. 507; Com. v. Schroeder, 302 Pa. 1; Com. v. Parker, 294 Pa. 144; Com. v. Mellor, 294 Pa. 339; Com. v. Dague, 302 Pa. 13; Com. v. Flood, 302 Pa. 190; Com. v. Williams, 307 Pa. 134.

OPINION BY MR. JUSTICE KEPHART, May 22, 1933:

Appellant, convicted of murder of the first degree and sentenced to death, submits as reasons for a reversal of the judgment a number of supposed trial errors. To better understand the questions involved, we will review the salient features of the case.

Appellant lived in Bethlehem Township, Northampton County, with his wife and her two children. He had

been married before, his wife having divorced him in 1925, and his marriage to his present wife occurred in 1930, about two years prior to the homicide in October, 1932. Appellant had been out of work for about two years; his wife worked in a neighboring city and came home twice a week. Kurutz's two stepchildren remained at home, doing the housework and assisting with the chores about the farm. For sometime there had been strife and bickering between him and the children. Joseph, fifteen, was under weight, undernourished, small for his age, and in height stood about two inches below Kurutz's chin. Kurutz was 47 years old, five feet nine and a half inches tall and weighed 183 pounds. Kurutz admitted that he had beaten the boy on a number of occasions prior to the time of the murder; that he had thrown buckets and other objects at him, and had numerous quarrels with him. The Commonwealth's testimony showed that he abused the boy, kicking him until he was black and blue, striking him, and by his brutal treatment frequently bruised and marked his body. On one occasion he told a witness that he would some day shoot Joseph.

On the day of the shooting, Kurutz had been away from his home for several hours. On his return he quarreled with the boy about the manner in which he watered and tied the cow. He was very angry and told the boy and his sister, Frances, to eat their dinner. While they were at the table he came into the kitchen and sat down to eat. The children shortly thereafter arose and went to an adjoining room. The little boy, in the hearing of the defendant, said to his sister that he was going to town to get a square meal. Kurutz, going into the room where the two children were, said that he would "show him that he would not go to town." After making this remark, Kurutz returned to the kitchen, into a far corner of the room, picked up his gun, broke it to load it, reached into a coat pocket and took from it a shell which fitted the gun, inserted the shell into the gun, closed it

and walked back to the dining room. At that time the boy was in his bedroom which adjoined the dining room. Kurutz thereupon fired a shot which went through the boy's heart, causing instantaneous death. Immediately after the firing, little Frances was about to run when Kurutz said to her that if she should run or scream he would shoot her and she would be the next to die. He then told the girl, as he told others afterwards, that it served the boy right, that he had "too big a mouth anyway." Thereafter, Kurutz surrendered to the police, and at the trial the defense was that the killing was accidental, he merely wishing to scare the boy and not to kill him. He admitted that he shot the boy while in a state of rage, with a shotgun held so close to his victim that the chest bones were crushed and broken.

Kurutz was born in Hungary, came to this country when 18, went to school for nine years and was fairly intelligent. He submitted himself as a witness and during his cross-examination and the examination of Frances, his stepdaughter, testimony was brought out which had a tendency to show a good character; that he was fairly intelligent, having attended school in Hungary; that he was industrious, having worked for Bethlehem Steel Company until two years ago when he was laid off; that he was attentive to the farm and did most of the work there, and was not addicted to the use of liquor.

In the course of the cross-examination by the Commonwealth, Kurutz was asked, whether he had not pleaded guilty to firing a revolver at his first wife after she had procured a divorce. The question was objected to as being in violation of the Act of March 15, 1911, P. L. 20, which forbids cross-examination of the accused as to former convictions except under certain circumstances. The Commonwealth stated that the purpose of the question was: "that the jury, if they find the defendant guilty of murder in the first degree, may be aided by the past conduct, or the knowledge of the past con-

duct of this defendant in arriving at their verdict and in passing or in returning the verdict with the sentence." The objection was overruled and appellant admitted that he had fired at his wife and had entered a plea of guilty to the charge of attempt to murder. The admission of this testimony is the subject of the first assignment of error.

First, our consideration of the admissibility of this evidence is confined to the purpose for which it was offered. In Com. v. Williams, 307 Pa. 134, 147, we reviewed the cases concerning the admissibility of evidence as to former convictions under the Act of 1911 as affected by the Act of May 14, 1925, P. L. 759, authorizing the jury to fix the penalty in homicide cases. The cases prior to the acts were summarized and the changes which resulted from the passage of the acts pointed out. It was then stated: "......we have......admitted evidence of prior convictions and other offenses in aggravation of the penalty in four cases, Com. v. Parker, supra [294 Pa. 144], Com. v. Mellor, 294 Pa. 339, Com. v. Dague, 302 Pa. 13, and Com. v. Flood, 302 Pa. 190......we definitely said in Com. v. Parker, supra, and the other cases above cited, that evidence of prior convictions was admissible under the Act of 1925 in aggravation of the penalty."

Appellant contends that such evidence cannot be brought out on cross-examination. This was distinctly ruled upon in Com. v. Flood, supra, where it was held that evidence so brought to the attention of the jury was proper for their consideration in determining the sentence to be inflicted. In that case, it was stated generally on the subject: "While the statement in this case might have militated against defendant in a general way, and without the Act of 1925 would have been improper, it became material evidence as an aid to the jury in determining the punishment to be inflicted and in ascertaining whether defendant is entitled to mercy. This class of criminal cases must not be confused with

the authorities which exclude prior and subsequent acts as substantive evidence of the commission of a crime. It is here admitted for the sole purpose of enabling the jury to properly administer the punishment and the trial judge should be very careful to explain and emphasize this limitation in his charge to the jury." We again repeat that such evidence (as to other crimes) is admissible in homicide cases only where the trial judge is convinced that the crime on trial was committed for profit, such as highway robbery, burglary, murder for life insurance, bank holdups, and the like, and/or the criminal is an habitual offender against society, or where death is the result of sordid passion, or is of an atrocious nature. In such cases the jury may have before it the past deeds of the accused that it may be fully advised of his nature and deserts when it fixes the penalty to be suffered by him. In Com. v. Williams, supra, it was said: "A desperate character should not escape the just consequences of his act as he might otherwise do if the arms of the Commonwealth were fettered by the Act of 1911 or the common law."

While the court in its charge expanded the purpose for which the Commonwealth offered the evidence of former conviction, stating that the jury might consider this evidence as to prior conviction with reference to defendant's credibility, the court under the circumstances committed no error. Appellant made no objection to the charge; his counsel stated, when asked if there was anything that counsel wished the court to correct in the charge: "I have no recollection of any misstatement upon your Honor's part." In fact, the mention by the court of this evidence as affecting credibility was suggested by defendant's counsel in his objection to the offer to prove prior conviction by the Commonwealth, he saying: "The offer of the district attorney is only competent for the purpose of affecting the credibility of the defendant." Inasmuch as there was evidence tending to show good character, and defendant's admission

that the evidence was proper as affecting credibility when objecting to it under the Act of 1925 because the crime was not sordid or atrocious, the court committed no prejudicial error in the charge as to credibility. What we have just stated covers also the question as to a prior conviction for stabbing in Michigan. This evidence was clearly proper for the jury in fixing the penalty. Its exclusion by the lower court was improper even though the record was not in court to show defendant's conviction of that charge. In this respect, the case is similar to Com. v. Flood, supra. Of course, without the record the Commonwealth would have been bound by defendant's answer.

We therefore conclude that the court did not err in admitting evidence of the prior commission of a crime by defendant. The court below in its charge strongly emphasized the purpose for which the evidence was presented and ultimately limited it solely to consideration by the jury in arriving at a determination of the proper penalty.

The last assignment is that the district attorney withheld from counsel for the defense a sworn statement made to the authorities by the sole eyewitness to the homicide, which contained evidence that the defendant appeared to be under the influence of liquor at the time of the homicide. Counsel for the defense knew who the only eyewitness was, and had an opportunity to consult with her at any time before trial. She appeared in court and testified. Her sworn statement before trial to the officers was introduced in evidence for the consideration of the jury, and counsel subjected her to a severe cross-examination on it. The Commonwealth did not fail to produce all the competent evidence, and was not required to produce this written statement prior to the time it was put in evidence. All the witnesses who saw appellant immediately before and after the commission of the crime testified that he was sober, and the only shred of evidence to the contrary was the statement of

this twelve-year-old girl that appellant's face was red at the time he returned home on the day of the murder, and he appeared as though he might have been drinking.

We have read the evidence with care. It contains all the elements of murder in the first degree, and the jury was justified in its finding.

All the assignments of error are overruled; the judgment is affirmed, and the record remitted for the purpose of execution.