Commonwealth *v.* Walker, Appellant.

Argued January 15, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Frank A. Paul,* with him *Thomas J. Minnick, Jr.,* for appellant.

*Clare Gerald Fenerty,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE MAXEY, March 19, 1934:

This is an appeal by Charles Walker, aged 29 years at the time of the offense charged, who is under sentence of death for murder in the first degree. He was convicted of the murder on December 6, 1932, of Lucille Sharp, a 24-year-old widow, with one child. The weapon used by defendant was a razor. A day or two before the homicide the defendant threatened to "fix Lucille," and to "go downtown and borrow a gun." On the day of the homicide he took a razor, ascended the stairs of the boarding house, where he and his intended victim lived: she, in the front room on the third floor, and he, in the front room on the second floor. Defendant inflicted nine wounds upon the deceased. Some of these cuts were eight to ten inches in length. Defendant's sister-in-law, testifying for the Commonwealth, stated that he passed her (the witness) "with a knife in his hand," shortly after the attack on the deceased, and that defendant said: "I have done what I wanted to do and I am willing to go back now and spend the balance of my life in the penitentiary." In the statement the defendant made to the police shortly after he was arrested, he stated that he had been friendly with Lucille Sharp, and after a little argument had become unfriendly. Later they became friendly again and the friendship lasted until about a month before the homicide. He said that on the day of the homicide he spoke to her about using her influence with her friends to get him a job. About 1:00 p. m. he went upstairs to ask her, "Did she intercede about the job? Then she called me bad names and it hurt me so at the time being and she had no reason to do it and I lost control of myself, and cut her."

The defendant testified that at the fatal interview Mrs. Sharp had objected to his attentions to one Irene Baston, and that he said to her: "If this keeps up I will be compelled to break our engagement. She went to the bureau drawer and got something," approached him and

"flashed the razor. I slapped it out of her hand. I got the razor......and I cut her until she turned me loose." He denied that he had any weapon in his hand when he went upstairs.

The Commonwealth showed that about 1:30 p. m. on the day of the homicide, Enoch Walker, and his wife, Mattie Walker, the brother and sister-in-law, respectively, of the defendant, and the defendant, himself, and Lucille Sharp, the victim, and her son Edward, a child of five years of age, were talking pleasantly together in the kitchen of the house where they lived; that Lucille left the group, went up to her room, and a few minutes later the defendant went upstairs. Shortly afterwards the persons downstairs heard a woman scream. Then they saw defendant "coming down from her room with a knife in his hand" and blood on his sleeve. They found Lucille Sharp upstairs, face downward on the floor of the bathroom, and in a dying condition, as a result of the stab wounds inflicted upon various parts of her body: two being in the neck, one in the abdomen, one in the arm, and at least five in the back. In was conceded that all these wounds were inflicted by defendant. They indicated malignity of purpose and ferocity of disposition. The large number of these fatal wounds fully justified in themselves the inference of the existence in the defendant's mind of a specific intent to kill the victim. This inference is further supported by the defendant's threat against the deceased and the declaration he made immediately after the stabbing, already referred to herein.

The case was submitted to the jury under proper instructions, and the jury found a verdict of murder in the first degree. This verdict was amply warranted by the evidence.

The chief complaint of the appellant is that at the trial of the case the Commonwealth was permitted to show that defendant had been previously arrested, sentenced, and convicted on two separate bills of indict-

ment, charging him with murder, and corroborated such testimony by offering in evidence the bills of indictment. These former homicides were committed in 1920. One was for the murder of one Samuel Laken, and the other was for the murder of one Samuel Abram. To one of these bills defendant pleaded guilty, and on the other he was found guilty, and as a result of his conviction on these two indictments, he was sentenced to a term of imprisonment of not less than nineteen years and six months, nor more than twenty years in the Eastern Penitentiary. At the end of ten years, i. e., in 1931, he was paroled. The court in the charge to the jury made it clear that the legal purpose of these indictments was *not* to assist the jury in determining the *guilt or innocence* of the defendant of the crime with which he was then being tried, but for the purpose of enabling the jury to determine *whether life imprisonment or electrocution* was the appropriate penalty in the event the defendant was adjudged guilty of murder in the first degree. The language of the court on this phase of the case is as follows: "Members of the jury, you are not to consider these two records in any way, shape or form in deciding whether or not this defendant is guilty or innocent or if guilty, of what crime; you will pay no attention to these bills of indictment and his former record until you have decided what, if anything, the man has done, and if you then decide he has committed the crime of murder of the first degree then for the first time, in considering what the penalty shall be in that case, you have a right to consider these bills of indictment as weighing on that question, together with all the other evidence in the case in deciding whether you think, in the exercise of your discretion, this defendant should be given life imprisonment or suffer death, as the act says, in accordance with the method provided by law."

This court has repeatedly held that proof of former convictions may be received in evidence for the legal purposes so adequately stated by the trial judge. We re-

cently so held in Com. v. Harris and Sterling, 314 Pa. 81. See also Com. v. Stabinsky, 313 Pa. 231, 169 A. 439; Com. v. Kurutz, 312 Pa. 343, 168 A. 28, and Com. v. Williams, 307 Pa. 134, 160 A. 602.

Strenuous objection was also made to the testimony of Harry Laken, who identified the defendant as the Charles Walker who had killed his father, Samuel Laken, in 1920. This testimony was admissible to identify the defendant as the Charles Walker named in the indictment then in evidence and it did not become inadmissible by reason of the fact that it might tend to "prejudice and inflame the minds of the jurors against the defendant," as appellant charges it did. If testimony is admissible, it cannot be excluded because of its possible prejudicial effect psychologically.

In the record before us all of the elements of murder of the first degree appear. The assignments of error are overruled.

The judgment is affirmed and the record is remitted to the court below for the purpose of execution.