Commonwealth *v.* Rucker, Appellant.

Argued November 30, 1960.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Louis Lipschitz*, with him *Benjamin R. Donolow*, for appellant.

*Arlen Specter*, Assistant District Attorney, with him *William H. Wolf, Jr.* and *Robert W. Williams, Jr.*, Assistant District Attorneys, *Paul M. Chalfin*, First Assistant District Attorney, and *Victor H. Blanc*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BELL, March 23, 1961:

On December 13, 1958, at approximately 9 p.m., defendant with one Carl Melton* forced open the cellar door and entered the grocery store and dwelling of Samuel Schloss and Rose Schloss, his wife, which was located at 311 North Franklin Street, Philadelphia. Their principal objective was to rob the Schlosses, who were each 65 years of age. Melton grabbed Schloss and brutally and mercilessly beat him on his head with a hatchet and various large pieces of brass pipe—the blood was spattered on the floor, the walls and even the ceiling. Defendant went into another room, knocked Mrs. Schloss to the ground, stamped several times on her face with his heel, beat her into unconsciousness and then stabbed her in several parts of her body with a long boning knife, which he left in her body. She died from these knife wounds. Without further detail it will suffice to say that it was one of the most brutal, vicious, merciless, unnecessary and inhuman killings ever committed. It was not only committed in the perpetration of a robbery,

---

* Melton was tried separately and was convicted of murder in the first degree with penalty of death. Rucker took turns in brutally beating Schloss into insensibility. Miraculously he survived.

but it was also a willful, deliberate and premeditated murder. They then rifled the cash register and fled.

An hour later that night defendant and Melton were arrested on the street a short distance from the Schloss home. There were blood stains on the arms and clothing of both men and they were caught with the "fruits of the crime" (robbery). Defendant not only signed a voluntary detailed confession but also re-enacted the killing for the police. Defendant did not testify in his own defense. After a very able charge by the Court the jury convicted defendant of first degree murder with penalty of death.

Defendant filed 25 reasons for a new trial, but urges only four of them on this appeal. The first one is that it is a violation of due process to introduce prior to a verdict of guilty, evidence of a defendant's prior convictions for the purpose of affecting the penalty. We have expressly decided this question adversely to defendants. The murder was committed, the verdict of the jury was rendered, and the judgment of sentence was entered prior to the Act of December 1, 1959—the split verdict Act—and that statute will not be applied retroactively: *Commonwealth v. Scoleri*, 399 Pa. 110, 160 A. 2d 215.

Defendant's second contention is that it was error to introduce evidence of prior convictions for the purpose of affecting the penalty without showing the sentences which were imposed on such prior convictions. To support this proposition defendant cites *Commonwealth v. Minnich*, 250 Pa. 363, 95 A. 565. That case is distinguishable. It involved a question of the admissibility of the record of a conviction of a principal upon the trial of an accessory. The Court held that the jury's verdict in the principal's case was inadmissible because (a) due to a motion for a new trial which had not been disposed of by the trial Court *the conviction of the principal had not yet been approved by the trial*

*Court* and judgment had not been entered nor sentence imposed thereon and (b) defendant could not be convicted as an accessory unless there was first a conviction of the principal by the jury and judgment entered thereon.

This Court has more recently held that for the purpose of fixing penalty, evidence of a conviction is admissible even though sentence was suspended, and that written and oral statements made by defendant as well as records of admissions by him in connection with other crimes are admissible: *Commonwealth v. Simmons,* 361 Pa. 391,* 65 A. 2d 353; *Commonwealth v. Thompson,* 389 Pa. 382,** 133 A. 2d 207.

In *Commonwealth v. Simmons,* supra, the Court, speaking through Mr. Justice Stern said (pages 401-402) : "The court, over objection, admitted in evidence the official records of defendant's previous criminal offenses,—the conspiracy to rob in Lancaster County and the participation in a robbery in Dauphin County. These records were admissible in order to aid the jury in its function of fixing the penalty if they found the crime to be one of murder in the first degree; evidence of former convictions has been accepted for that purpose ever since the passage of the Act of May 14, 1925, P. L. 759; Commonwealth v. Parker, 294 Pa. 144, 143 A. 904; Commonwealth v. Williams, 307 Pa. 134, 160 A. 602; Commonwealth v. Harris, 314 Pa. 81, 171 A. 279; Commonwealth v. Holley, 358 Pa. 296, 56 A. 2d 546. The objection of defendant's counsel was based upon the fact that in both cases sentence had been suspended and defendant placed on probation; therefore reliance is placed upon the *technical proposition*** that, to constitute an admissible rec-

---

* Certiorari denied, 338 U. S. 862.
** Certiorari denied, 355 U. S. 849.
*** Italics throughout, ours.

ord of a conviction, there must be not only a verdict and judgment of guilt but also the imposition of a sentence. *This indicates a complete misapprehension of the purpose for which the jury is to receive information of other offenses* committed by the defendant on trial, namely, that they should be able intelligently to fix the penalty, and, to that end, that they ought to know what manner of man it is upon whom they are being asked to impose sentence,—his criminal proclivities, his demonstrated attitude toward law and order, and, on the other hand, such mitigating factors as may exist in the nature of impaired health, mental deficiencies, state of intoxication, or other circumstances. Accordingly, it has never been held that a defendant's commission of other crimes can be shown only by official records; on the contrary, proof thereof has been received in the shape of oral statements or written confessions made by defendant (Commonwealth v. Parker, 294 Pa. 144, 143 A. 904; Commonwealth v. Mellor, 294 Pa. 339, 144 A. 534; Commonwealth v. Dague, 302 Pa. 13, 152 A. 839; Commonwealth v. Petrillo, 341 Pa. 209, 19 A. 2d 288), as well as through oral testimony elicited from the defendant on the witness stand (Commonwealth v. Flood, 302 Pa. 190, 153 A. 152; Commonwealth v. Kurutz, 312 Pa. 343, 168 A. 28)."

In *Commonwealth v. Thompson,* supra, the Court in sustaining a murder conviction and the admissibility of the record of a court-martial for the sole purpose of aiding the jury in determining the penalty to be imposed said (page 399) : "For almost three decades in Pennsylvania it has been a well established and recognized rule of law that evidence of prior offenses committed by the defendant, whether proven by records of prior convictions, by written or oral statements made by the defendant or elicited upon cross-examination of the defendant, is admissible in a homi-

cide trial. . . ." Accord on admissibility of prior crimes for purpose of determining the penalty: *Commonwealth v. Lowry*, 374 Pa. 594, 98 A. 2d 733.

Defendant contended during the Commonwealth's case that he had the right to introduce *the notes of testimony* in all the prior cases in which he was convicted, but when it came to the presentation of his defense he not only failed to take the witness stand but he likewise did not offer the bills of indictment which showed the sentences which had been imposed on his prior convictions. The introduction of mitigating circumstances in relief of penalty was, prior to the recent split verdict statute, largely a matter for the discretion of the trial Judge: *Commonwealth v. Williams*, 307 Pa. 134, 155, 160 A. 602. To permit a jury to retry cases of former convictions in order to consider the propriety of the conviction, or of the sentence, or possible mitigating circumstances would befog and make trials almost interminable and practically and legally, be utterly ridiculous. We find no merit in this contention.

Defendant's third contention is that it was error for the trial Judge to refuse to instruct the jury that the plea of "not guilty" is a denial of the murder charge. This was unnecessary. The Judge charged the jury, in material part, as follows: "The defendant has not seen fit to produce any evidence in answer to the charge of the Commonwealth, and in answer to the evidence produced by the Commonwealth. It is the law, and I so charge you, that the fact that the defendant does not go on the stand is not to be taken and considered as any evidence of guilt, *or to be taken and considered as anything against him whatsoever*. When the General Evidence Act of 1887 was passed . . . it was provided . . . 'Nor may the neglect or refusal of the defendant actually on trial in a criminal court to offer himself as a witness be treated as

creating any presumption against him, or be *adversely* referred to by court or counsel during the trial.' I want you to know that."

Moreover the trial Judge repeatedly said to the jury that it was their recollection and theirs alone which was binding; and that "you [must] bear in mind that in a criminal case the defendant is presumed to be innocent, and the burden is on the Commonwealth to prove the defendant guilty of the crime charged beyond a reasonable doubt, and this burden never shifts." The trial Judge further charged "Since the Commonwealth has the burden throughout the trial to establish the guilt of the defendant beyond a reasonable doubt, the jury will weigh the evidence in the light of that burden in reaching a verdict." That was a fair and (under the issues in this case) a proper charge.

In *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A. 2d 820, the Court said (pages 417-418) : "We come now to the following excerpt from the Court's charge: 'I think there is no contradiction of William Kloiber having been at the farm and having gone with Michael Senkovich, at least the first time, to the Silver Star. So that William Kloiber does not make a denial that he was with Michael Senkovich on the early morning when this robbery occurred . . .'. There was ample testimony to prove that William Kloiber was at the farm and at the Silver Star with Senkovich at the times in question; but the question remains whether this constituted an adverse comment by the Court on the defendant's failure to testify in violation of §10 of the Act of 1887.

"William Kloiber pleaded 'not guilty' and did not take the witness stand. After correctly telling the jury that it is their understanding and recollection of the testimony which governs and prevails, and that they are the persons to determine its weight and credibility, the Court said: 'There is one more thing to be

said to you, and that is that any person accused of crime has a constitutional right not to testify. They have a right not to take the stand if they see fit to do so, and I want to impress on you that the fact that a person has chosen to exercise that constitutional right does not give you the power to draw any unfair or adverse inference concerning that person. To put it specifically, William Kloiber chose not to testify in this case. That was his constitutional privilege, and the fact that he exercised that right does not give you the right to draw any inference that could be adverse to him in this case.' That was certainly a very fair and proper statement of the law.

". . . The statement of the trial Judge that William Kloiber does not make a denial that he was with Senkovich on the early morning when this robbery occurred . . . does not under our prior decisions constitute reversible error: Commonwealth v. Thomas, 275 Pa. 137, 141, 118 A. 667; Commonwealth v. Holley, 358 Pa. 296, 300, 301, 56 A. 2d 546; Commonwealth v. Schuster, 158 Pa. Superior Ct. 164, 168, 169, 44 A. 2d 303; Commonwealth v. Nelson, 294 Pa. 544, 144 A. 542; Commonwealth v. Chickerella, 251 Pa. 160, 96 A. 129. Cf. however, Commonwealth v. Green, 233 Pa. 291, 82 A. 250; Commonwealth v. Foley, 24 Pa. Superior Ct. 414."

In *Commonwealth v. Chickerella,* supra, the trial Judge said "There has been no dispute as to the facts; that is to say, the defense has not made any denial of the testimony as offered by the Commonwealth." This Court held that that charge did not violate Section 10 of the Act of April 23, 1887, supra.

Similarly in *Commonwealth v. Thomas,* 275 Pa., supra, the Court sustained the following charge (pages 140-141): " 'The defendant has not seen fit to produce any evidence in answer to the charge of the Commonwealth, and in answer to the evidence pro-

duced by the Commonwealth. It is the law, and I so charge you, that the fact that the defendant does not go on the stand, or does not produce any evidence in his own behalf, is not to be taken and considered as any evidence of guilt, or to be taken and considered as anything against him whatsoever. . . .'

". . . It is to be noted that no longer does the mere mention of the defendant's failure to take advantage of his right to be heard constitute error (Com. v. Brown, 16 W.N.C. 557), but *to justify reversal the reference thereto must be 'adverse.'*

"So, a statement that the evidence of the Commonwealth is uncontradicted is harmless: Com. v. Chickerella, 251 Pa. 160; Com. v. Martin, 34 Pa. Superior Ct. 451; Com. v. Rizzo, 78 Pa. Superior Ct. 163. To constitute error, the remark must go further, indicating a duty of the defendant to testify, and permitting an unfavorable inference to be drawn from his failure to do so: Com. v. Green, 233 Pa. 291; Com. v. Foley, 24 Pa. Superior Ct. 414. . . ."

Defendant's fourth contention is that it was an invasion of privacy and the coercion of a juror and consequently "error for the trial Judge to advise them that each juror when examined stated that he had no conscientious or other scruples against the death penalty."

After two hours of deliberation the jury returned to the courtroom and asked the trial Judge this question: "Juror No. 5—we would like to know what his answer to the question—of whether or not he believes in capital punishment." The Court answered:

"Members of the jury, in answer to the question that has been propounded to the Court I instruct you that what any juror has said about his belief in capital punishment on his voir dire is not a matter for your consideration. Your responsibility is to render

a verdict under all the evidence and the law as given to you by this Court.

"I may say in passing that each juror who is sworn in this case, and when examined, stated that he had no conscientious or other scruples against the death penalty in a proper case.

"The jury may go back."

What else could a Judge say or do? Is a trial to be nullified, testimony to be endless, the law and justice needlessly befogged and delayed because of a harmless irrelevant question by a juror and a Judge's accurate and unprejudicial answer thereto? This contention is so trivial as to be obviously and utterly devoid of merit.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Majority Opinion cites *Commonwealth v. Thompson*, 389 Pa. 382, in support of its position that it is proper to introduce evidence of prior convictions in murder cases even before it is established that the defendant committed the crime with which he presently stands charged. I dissented in the *Thompson* case, and I dissent in this case for the reasons set forth at length in the *Thompson* case.

---

DISSENTING OPINION BY MR. JUSTICE BOK:

I dissent for the reasons given in my dissenting opinion in *Commonwealth v. Scoleri*, 399 Pa. 110 (1960), 160 A. 2d 215.