James F. TORRANCE, Appellant,

v.

Joseph SALZINGER, Warden of the Dauphin County Prison, and Wesley M. Barrick, Sheriff of Dauphin County, Pennsylvania.

No. 13685.

United States Court of Appeals Third Circuit.

Argued Sept. 22, 1961.

Decided Jan. 10, 1962.

Gilbert W. Helwig, Pittsburgh, Pa., for appellant.

Huette F. Dowling, Sp. Deputy Atty. Gen., Harrisburg, Pa. (Martin H. Lock, Dist. Atty. of Dauphin County, William Lipsitt, Harrisburg, Pa., Alfred P. Filippone, Deputy Atty. Gen., Anne X. Alpern, Atty. Gen., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal by a state prisoner, James Torrance, from a federal district court's denial of his application for a writ of habeas corpus. Petitioner is confined pursuant to sentences imposed by a Pennsylvania court upon convictions of misbehavior in public office and conspiracy to defraud the Pennsylvania Turnpike Commission. The charges grew out of contracts entered into by the Pennsylvania Turnpike Commission, of which petitioner was a long time member and sometime secretary-treasurer.

Nine persons, several of whom were officials of the Turnpike Commission, were tried together. Five were convicted and four acquitted. The Superior Court and the State Supreme Court, affirmed the convictions involved here. Commonwealth v. Evans et al., 1959, 190 Pa.Super. 179, 154 A.2d 57, aff'd 1960, 399 Pa. 387, 160 A.2d 407. Certiorari was denied by the Supreme Court of the United States, 1960, 364 U.S. 899, 81 S. Ct. 233, 5 L.Ed.2d 194.

After his commitment, Torrance filed the present petition for habeas corpus in the appropriate federal district court alleging that various occurrences during or connected with his trial were so fundamentally unfair that his convictions should be set aside as denying due process of law. The facts upon which the petitioner predicates his contentions appear in the trial record. The district court analyzed these contentions in detail and concluded that there had been no denial of due process. M.D.Pa.1961, 195 F. Supp. 804. We are now asked to review three of the claims rejected in that decision.

It is petitioner's first contention that prejudicial publicity, beginning at the time of the initial grand jury investigation of the Pennsylvania Turnpike scandals, so poisoned public opinion against him that his trial could not have been an essentially fair determination of his guilt or innocence. However, certain undisputed facts make it impossible for him to prevail on this point.

The searching voir dire examination of the prospective trial jurors, which extends over some two hundred typed pages of the trial transcript, affirmatively indicates that the jurors who tried this case were not prejudiced against the petitioner. Two of the twelve who found petitioner guilty denied having read or heard anything about the Turnpike scandals. Nine others denied having formed any opinion about the case. One said that he had formed an opinion, but not one that would prevent him from rendering a verdict solely upon the trial evidence. Nothing was disclosed on the voir dire which cast doubt upon the credibility of these assertions of open-mindedness.

Petitioner's showing is deficient in another way. It does not appear that derogatory or hostile and inflammatory statements about the petitioner were circulated during or shortly before the trial in or near the community where the jurors lived. Yet, it is only on a convincing showing that the accused has been tried while the public mind was poisoned against him by current and pervasive derogatory publicity that convictions have been set aside on such claims as the petitioner asserts here. Irvin v. Dowd, 1961, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; Shepherd v. State of Florida, 1951, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 (concurring opinion); Delaney v. United States, 1st Cir. 1952, 199 F.2d 107, 39 A.L.R.2d 1300.

Petitioner places his principal reliance upon two television appearances of the Governor of Pennsylvania which occurred and received great publicity some eight months before the trial, when the investigating grand jury was just begin-

ning its inquiry into the Turnpike scandals. For the text of the Governor's statements, see dissenting opinion in Commonwealth v. Evans, 1959, 190 Pa. Super. 179, 281–285, n. 1, 154 A.2d 57, 109–111, n. 1. Undoubtedly, the Governor's statements were dramatic and denunciatory. He made a political issue of the alleged Turnpike scandals. He asserted that the State had been cheated of large sums of money by members of a rival political party who had been appointed to office during a previous administration. He emphatically condemned the perpetrators of the alleged wrong, but did not identify the petitioner as one of them. The petitioner argues that these statements are similar to statements by public prosecutors and other public officials that have led to the invalidation of other convictions. E. g., Shepherd v. State of Florida, supra; Delaney v. United States, supra. However, on their face the statements in those cases were much more extreme and inflammatory than any of the things said by the Governor of Pennsylvania concerning the Turnpike scandals.

Moreover, newspaper stories affirmatively declared that the subsequently complaining individuals were guilty and denounced and excoriated them. Here, the Governor made no mention of the petitioner. Indeed, he made it clear that the guilt or innocence of particular parties would be determined in the regular course of criminal investigation and trial. In addition, the statements in the cited cases were made so near to the time of trial that they must have been fresh in the public mind. In contrast, the Governor's statement here was made some three months before the defendant was even indicted.[1] It antedated his trial by almost eight months and thus could not have constituted fresh incitement to prospective trial jurors. Compare Stroble v. State of California, 1952, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872, where a six week interval between particular publicity and trial was deemed significant. True, during the intervening months the media of public information had mentioned the Governor's past statements from time to time in the course of normal publicity about the pending criminal cases. But, at most, these references may have served to remind some readers that the Governor had strongly expressed the view that there had been criminal conduct in the administration of the Pennsylvania Turnpike and had roundly condemned this wrongdoing.

It is also noteworthy that at the trial itself, after the court refused to quash the indictments, none of the several outstanding members of the bar who represented the defendants moved for a continuance or postponement on the ground that adverse publicity had made a fair trial impossible at that time. Rather, they contented themselves with a long and searching voir dire examination of prospective jurors.

One additional consideration deserves mention. Petitioner was one of the nine defendants who were tried together. Five were convicted, four were acquitted. This differentiation suggests that the publicity preceding the trial did not create any serious community prejudice against the entire group of accused per-

[1] Assuming arguendo that the investigating grand jury was influenced by the Governor's statements, it does not follow that there was bias in the indicting of petitioner three months later. For the intervening procedure prescribed in such a case is an elaborate one involving a court, the prosecutor and a second grand jury. The prosecutor is required to obtain the approval of the Court of Quarter Sessions before drafting and presenting an indictment based on the investigating grand jury's presentment. Then this indictment must be considered and voted by a second grand jury before it becomes the formal accusation upon which a criminal trial is held. There is no showing, not even a claim, that bias infected this entire series of decisions by mutually independent public functionaries.

Moreover, whatever view one may take of the claim of prejudice in the indicting process, it is difficult to see how the ultimate conviction of the accused can be a denial of due process so long as the case is tried to an unbiased petit jury. Geagan v. Gavin, D.Mass.1960, 181 F.Supp. 466, aff'd, 1st Cir.1961, 292 F.2d 244.

sons. And there had been no public condemnation of petitioner as playing a leading or dominant role in the alleged conspiracy such as would lead to a conclusion that greater prejudice had been aroused against him than against those who were acquitted.

Next, petitioner claims that his trial was made essentially unfair by the introduction in evidence of the lengthy interrogation of a co-defendant, John Paul, before the grand jury that investigated the Turnpike scandals. The reading of the Paul statement required almost a full trial day. The statement contained a few admissions relevant to Paul's alleged participation in the conspiracy. There were only passing references to Torrance, none of them notably prejudicial or incriminating. At most Paul's testimony may have created an overall impression that Torrance as a member and officer of the Turnpike Commission participated in a number of the transactions upon which the indictments were founded. The trial judge dealt with this situation by clearly instructing the jury to consider Paul's statement as evidence against Paul alone.

In many cases it is debatable whether a jury does or psychologically can comply with instructions that testimony be used against one defendant, but not against another. See Blumenthal v. United States, 1947, 332 U.S. 539, 559–560, 68 S.Ct. 248, 92 L.Ed. 154. Yet, in joint trials, particularly in conspiracy cases, it has repeatedly been held not to be reversible error, much less a denial of constitutional right, to admit damaging evidence with instructions that the jury consider it as proof against one defendant, but disregard its incriminating effect upon another defendant. E. g., Delli Paoli v. United States, 1957, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278; United States v. Griffin, 3d Cir. 1949, 176 F.2d 727. Only in the clearest cases of gross and easily avoidable prejudice to a co-defendant has reversible error been found in this method of handling evidence. E. g., United States v. Jacangelo, 3d Cir. 1960, 281 F.2d 574. Grave prejudice is not apparent in this case. Indeed, so slight was the impact of Paul's admissions, that he himself was acquitted. With reference to the conspiracy charge, the jury apparently credited Paul's picture of the Turnpike Commission as dominated by defendant Evans with Paul duped and acting as directed by Evans. But no essentially more damaging picture of Torrance's relation to the conspiracy emerged from Paul's testimony. Certainly, no constitutional right of petitioner was infringed by the limited admission of this evidence.

Petitioner's final contention is that the record is so lacking in evidence probative of his guilt that his conviction cannot be squared with the requirements of due process of law.

Only very recently has the Supreme Court undertaken to set aside state convictions as inconsistent with due process of law because they were not supported by proof of some essential element of the alleged crime. Garner v. State of Louisiana, 1961, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed. 207; Thompson v. City of Louisville, 1960, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. Indeed, both of the cited cases were decided after the Supreme Court of Pennsylvania heard petitioner's direct appeal. This chronology may well explain the fact that in the state appellate courts Torrance failed to claim that lack of supporting evidence made his conviction a denial of due process of law. Thereafter, no such claim was made, or could properly have been made for the first time, in petitioner's application to the Supreme Court of the United States for a writ of certiorari. In these circumstances, we think petitioner has not satisfied the requirement of Section 2254 of Title 28 U.S. Code, that, in the absence of special excuse, he shall exhaust available state remedies before seeking habeas corpus in a federal court. In this connection, it is clear that Pennsylvania practice permits such a constitutional issue as is now newly raised by way of federal habeas corpus to be asserted by habeas corpus in a state court. See, e. g., Common-

wealth ex rel. Haines v. Banmiller, 1958, 393 Pa. 439, 143 A.2d 661; Commonwealth ex rel. Spader v. Myers, 1958, 187 Pa.Super. 654, 145 A.2d 870. If there is substance to the present claim, proper deference to Pennsylvania dictates that the state courts be asked to consider the application of the rulings of the Thompson and Garner cases to the facts of the present case before we do so. The newness of those decisions emphasizes the propriety of this course. Accordingly, we rule that the petitioner has not exhausted his state remedies with reference to this constitutional claim and, therefore, that it is not ripe for federal adjudication.

The judgment denying petitioner a writ of habeas corpus will be affirmed.