UNITED STATES of America ex rel. Herman RUCKER, Appellant,

v.

David N. MYERS, Warden, State Correctional Institution, Graterford, Pennsylvania.

No. 13924.

United States Court of Appeals Third Circuit.

Argued Oct. 18, 1962.

Decided Nov. 30, 1962.

Rehearing Denied Jan. 23, 1963.

McLaughlin, Circuit Judge, dissented.

Before McLAUGHLIN and HASTIE, Circuit Judges, and DUMBAULD, District Judge.

HASTIE, Circuit Judge.

This is an appeal by a Pennsylvania state prisoner, who is under sentence of death for first degree murder, from a United States District Court's denial of his petition for a writ of habeas corpus on a claim that the procedure at his trial deprived him of due process of law. The highest state court had rejected this claim. Commonwealth v. Rucker, 1961, 403 Pa. 262, 168 A.2d 732, cert. denied, 368 U.S. 868, 82 S.Ct. 91, 7 L.Ed.2d 65.

During appellant's trial and before his conviction, the jury was informed, over his objection, that he had previously been convicted of voluntary manslaughter and aggravated assault. The jury was instructed that it should consider these convictions only for the purpose of determining the penalty for first degree murder if and after the accused should be found guilty of that crime. Appellant contends that this introduction of his prior criminal record in evidence during the presentation of the prosecution's case in chief [1] was so lacking in justification and so prejudicial that it constituted a denial of due process of law. On October 10, 1962, in United States ex rel. Scoleri v. Banmiller, 310 F.2d 720, this court, sitting en banc, sustained a similar contention. Therefore, our first inquiry is whether this case differs in any significant way from Scoleri.

The Scoleri case grew out of a homicide during the course of an armed robbery. The defense attempted to establish an alibi and to prove that the witnesses who placed the accused at the scene of the crime had mistaken another person of rather similar appearance for him. But when the jury retired to con-

---

Louis Lipschitz, Philadelphia, Pa., for appellant.

Arlen Specter, Asst. Dist. Atty., Philadelphia, Pa. (Louis F. McCabe, Asst. Dist. Atty., Paul M. Chalfin, First Asst. Dist. Atty., James C. Crumlish, Jr., Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

---

1. This procedure, first sanctioned in Commonwealth v. Parker, 1928, 294 Pa. 144, 143 A. 904, was followed until the "Split-Verdict Act" of December 1, 1959, P.L. 1621, § 1, 18 P.S. § 4701 (Supp.). Under that statute such evidence is introduced only in a supplementary proceeding after conviction to determine the penalty for first degree murder. However, the new law had not become effective at the time of appellant's trial.

sider this evidence, there was also before it Scoleri's criminal record of twenty-five prior robbery convictions, which had been included in the government's case in chief. Although the jury had been instructed to consider this record only in determining the penalty for first degree murder and not on the question of guilt or innocence, this court concluded that such proof of a large number of previous robberies by the accused was "gravely prejudicial" on the controverted question of his participation in the instant robbery. And since this prejudice could have been avoided and the limited proper purpose of the evidence could as well have been accomplished by merely withholding the evidence of prior crimes until after guilt had been determined, a majority of this court held that due process of law had been denied. It was the essence of our holding that, in the circumstances of the Scoleri case, the introduction of evidence of prior crimes needlessly subjected the accused to "grave prejudice".

With this rationale of Scoleri in mind, we next consider the issues and the evidence in the present case. This too was an indictment for murder alleged to have occurred during the commission of a robbery. The prosecution also undertook to show that the killing was willful and deliberate.

2. The following accurate summary of the facts as established without contradiction in the trial record appears in the opinion of the Supreme Court of Pennsylvania on the present appellant's direct appeal from his conviction:

"On December 13, 1958, at approximately 9 p. m., defendant with one Carl Melton forced open the cellar door and entered the grocery store and dwelling of Samuel Schloss and Rose Schloss, his wife, which was located at 311 North Franklin Street, Philadelphia. Their principal objective was to rob the Schlosses, who were each 65 years of age. Melton grabbed Schloss and brutally and mercilessly beat him on his head with a hatchet and various large pieces of brass pipe—the blood was spattered on the floor, the walls and even the ceiling. Defendant went into another room, knocked Mrs. Schloss to the ground,

The victim was the wife of the proprietor of a small corner grocery store in Philadelphia. There was undisputed evidence that on December 13, 1958, the couple closed the store at 6:30 p. m. and retired to their adjoining living quarters. About 9 p. m. two men burst in upon them, savagely beat both of them, stabbed and killed the wife, took more than one hundred dollars from a drawer and from the cash register, and escaped. Within two hours a search of the immediate neighborhood resulted in the apprehension and arrest of the appellant and another man. Their clothing was stained with what was later identified as human blood of the same type as that of the deceased, and they had in their possession money and papers, which were later identified as proceeds of the robbery.

Appellant made a full confession within a few hours after his arrest and shortly thereafter he reenacted the crime at its scene. A court stenographer recorded the confession verbatim, and it was introduced into evidence at the trial. In his confession, he admitted breaking into the house for the purpose of robbery, beating and stabbing the deceased, accomplishing the robbery, and fleeing from the premises. The defense did not contend that the confession was coerced or that it was incorrect in any detail.[2]

stamped several times on her face with his heel, beat her into unconsciousness and then stabbed her in several parts of her body with a long boning knife, which he left in her body. She died from these knife wounds. Without further detail it will suffice to say that it was one of the most brutal, vicious, merciless, unnecessary and inhuman killings ever committed. It was not only committed in the perpetration of a robbery, but it was also a willful, deliberate and premeditated murder. They then rifled the cash register and fled.

"An hour later that night defendant and Melton were arrested on the street a short distance from the Schloss home. There were blood stains on the arms and clothing of both men and they were caught with the 'fruits of the crime' (robbery). Defendant not only signed a voluntary detailed confession but also re-

At appellant's trial the only defense attempted was a showing and argument in mitigation that accused was a heavy drinker, that he was quarrelsome and bellicose when drinking, and that he had consumed considerable amounts of wine and whiskey shortly before setting out on his felonious enterprise. However, voluntary drunkenness was no defense at all in the circumstances of this case. On the clear and undisputed evidence, including appellant's explicit admission, this was a homicide committed during the commission of a felony. In accordance with Pennsylvania law the trial judge charged as follows:

> "Now, if you find that the defendant killed Rose Schloss in the perpetration of, or attempt to perpetrate, the felony of burglary or robbery, then the affirmative defense of intoxication would not be meaningful at all, because the specific intent to kill is not required under our statute to raise the crime to first degree murder under such circumstances."

Consistent with this charge, the jury could not properly have used the evidence of intoxication as a basis for finding the accused guilty of an offense less serious than first degree murder. Moreover, since appellant's drunkenness was voluntary, and his detailed confession and reconstruction of the crime demonstrated his awareness of what he was doing, the jury could not reasonably have avoided the conclusion that the accused was responsible for his conduct.

More generally, the evidence was clear, overwhelming and uncontroverted on every point essential to the proof of first degree murder. There was neither a significant conflict in the evidence nor a doubtful issue of fact in connection with which the jury's awareness of the defendant's prior conviction of voluntary manslaughter and aggravated assault could have been prejudicial. Indeed, a reading of the record makes it very clear that the only real question was whether death or a lesser penalty should be imposed as punishment for the felony-murder to which the accused had confessed. That, of course, is the very purpose for which the jury could properly consider the evidence of prior crime.

We recognize that there are some situations in which the procedure in a criminal investigation or prosecution has been so shocking and outrageous that a conviction will be vacated even though actual prejudice to the accused has not been proved. The use of torture or the imposition of gross indignity during the investigation of crime is such an intolerable procedure. Brown v. Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Rochin v. California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183. So is the willful employment of perjured testimony or the deliberate suppression of evidence favorable to the accused. Pyle v. Kansas, 1942, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214. In such cases the reprehensible character of the behavior of the representatives of the state is decisive without regard to any question of its effect upon the outcome of a trial.

But we are not dealing here with official conduct which is grossly wrong, regardless of any prejudicial effect upon the trial of the accused. Courts, including our own, repeatedly sanction the admission of evidence for one purpose with a cautionary instruction that it may not be used for any other. E.g., United States v. Laurelli, 3d Cir., 1961, 293 F. 2d 830, cert. denied, 1962, 368 U.S. 961, 82 S.Ct. 406, 7 L.Ed.2d 392. United States v. Stirone, 3d Cir., 1958, 262 F.2d 571, rev'd on other grounds, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. In this very case, if the accused had tes-

---

enacted the killing for the police. Defendant did not testify in his own defense. After a very able charge by the Court the jury convicted defendant of first degree murder with penalty of death." Commonweath v. Rucker, 1961, 403 Pa. 262, 168 A.2d 732.

tified in his own defense, evidence of prior crimes would have been admissible with an instruction that it be considered for the limited purpose of attacking his credibility. Commonwealth v. Quaranta, 1928, 295 Pa. 264, 145 A. 89. Courts frequently deplore such procedure. Judge Learned Hand has described it as "the recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else." See Nash v. United States, 2d Cir., 1932, 54 F.2d 1006, 1007, cert. denied, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945. But, the procedure is interdicted "only in the clearest cases of gross and easily avoided prejudice" to some party. See Torrance v. Salzinger, 3d Cir., 1962, 297 F.2d 902, 905, cert. denied, 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288. Accord United States v. Jacangelo, 3d Cir., 1960, 281 F.2d 574. Difference of judgment as to the likelihood of such prejudice seems to have caused the division of the Supreme Court in Delli Paoli v. United States, 1957, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278.

We have already demonstrated that the present record, unlike the Scoleri record, provides no basis for apprehension that the jury determination of guilt may have been unfairly influenced by the evidence of prior crimes. Therefore, we conclude that no such denial of due process of law as was found in Scoleri has been established here.

The judgment will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

Once the true, undisputed factual situation here is squarely faced, the issue is simple.

There was no defense evidence that the defendant had not committed the homicide. Nothing to cause the jury to doubt this. No pretension that the defendant was somewhere else when the crime was perpetrated or that some other person of "rather similar appearance" to him was responsible. As the majority opinion states: "At appellant's trial the only defense attempted was a showing and argument in mitigation that accused was a heavy drinker, that he was quarrelsome and bellicose when drinking, and that he had consumed considerable amounts of wine and whiskey shortly before setting out on his felonious enterprise."

That defense was not directed at acquittal of the charge of first degree murder. Under the Pennsylvania law drunkenness is no defense to a felony killing. So what was sought was not an unlawful reduction of the crime of felony murder to some lesser offense (which could not have been accomplished under the charge) but for the jury to exercise its prerogative, under the evidence and in accordance with the charge, to make the sentence life imprisonment instead of death.

The trial court did charge if this was a felony homicide "then the affirmative defense of intoxication would not be meaningful at all, because the specific intent to kill is not required under our statute to raise the crime to first degree murder under such circumstances." That went directly to the conviction of first degree murder. As to the penalty, the judge properly told the jury:

"If the defendant fails to prove the defense of intoxication to the satisfaction of the jury, this defense is not valueless. It does not deprive him of the benefit of whatever evidence is in the case on that subject when considered in connection with any other evidence in the case which might guide you as to the proper penalty in the event that you find the defendant guilty of murder in the first degree. Again I remind you, members of the jury, that my recollection of the evidence is that there is very little, if any, evidence of intoxication. However, you are the fact finding body and it is your recollection, and your recollection alone, which governs and controls."

That "affirmative defense of intoxication" was therefore before the jury on the one controverted issue of the trial, the question of whether the jury would

sentence the defendant to die or to imprisonment for life. There was nothing collateral about that problem. And nothing collateral about the defense effort to satisfy the jury that Rucker was a heavy drinker through the years and was drunk at the time of the crime. The only fair inference from the testimony of his unfortunate sister was that Rucker, since his return from three or four years of combat service under General Patton, was a nervous, quarrelsome alcoholic who even fought with her and his brothers when he was drunk and because he was drunk. Quite a point is made by the majority with reference to Rucker's "voluntary drunkenness". It is not needed now but at any new trial it should be thoroughly established that an alcoholic's drunkenness is not, generally speaking, voluntary but compulsive. Entirely aside from that, the trial jury had before it the miserable and pitiful deterioration of Rucker since the last war and the contention that he was intoxicated at the time of the slaying. Argued strongly to the jury, as this life or death proposition should have been and undoubtedly was, no one can reasonably say that the jury's verdict of guilty of first degree murder would not have fixed the penalty at life imprisonment. And no one, once the significance of the above simple facts is understood, can reasonably say that putting before the jury when it was making its most serious choice, the prisoner's past criminal record, did not substantially prejudice Rucker on the single real question before it. Until then, Rucker, justifiably, had an excellent chance of life imprisonment. That chance was destroyed by the jury being told that he had previously been indicted for murder, under which he had pleaded guilty to voluntary manslaughter and that he had also been tried and found guilty of trying to kill somebody else.

It is heartening to note that the majority opinion does not pretend that the introduction of Rucker's past crimes did not weigh heavily against him when the jury considered what his sentence should be. As Chief Justice Jones said in his dissent in Commonwealth v. DePofi, 362 Pa. 229, 251, 66 A.2d 649, 659 (1949), "The thing could, and no doubt has, actually worked out in practice in a truly shocking way."

Basically this appeal is not concerned with the conviction for first degree murder. The drunkenness did not vitiate the degree of the particular crime. It did heavily affect the punishment for that crime. Ignoring that, as the majority does, will not resolve the injustice of the way the death penalty was assured. The difference between living and dying even for a Rucker, cannot be properly designated as "immaterial". Rucker was grievously harmed by that evidence.

The exercise, attempted in the majority opinion, of compartmentalizing Scoleri does not come off successfully, because we are dealing with the penalty branch of the verdict, not the conviction itself as in Scoleri. The majority's interpretation of the principle of the Scoleri decision is that *serious* prejudice to a defendant resulting from the presentation to the jury of his criminal record must result in reversal. That construction is open to serious doubt. Indeed, it is not easy to accept the complacent assumption that the admission of his prior crimes record could be nonprejudicial to a defendant under any circumstances. However, that impressive argument also need not be followed through at this stage of these proceedings since the prejudice to Rucker as to the sentence imposed was overwhelming. Let no one be confused by the endeavor to appraise the amount of prejudice to him with respect to the killing of the victim. There was no defense to that. The glaring wrong before us in this appeal affected the penalty; if upheld it sends Rucker to the electric chair. Scoleri had a defense on the merits which was damaged by his record being given the jury. We do not touch the problem of how badly the revelation of Rucker's previous convictions hurt him with the jury as to the offense itself. That is not our current controversy. We are concerned exclusively with the penalty inflicted.

The majority opinion does not even tangentially come to grips with that one part of the jury verdict which is flagrantly wrong and which calls for a reversal of the judgment of conviction.