**UNITED STATES of America ex rel. John BERKERY, No. H3407, Petitioner,**

**v.**

**D. N. MYERS, Superintendent State Correctional Institution at Graterford, Pennsylvania, Respondent.**

**Misc. No. 2975.**

United States District Court
E. D. Pennsylvania.

June 1, 1965.

Robert F. Simone, Philadelphia, Pa., for petitioner.

James C. Crumlish, Jr., Dist. Atty., Gordon Gelfond, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

JOSEPH S. LORD, III, District Judge.

Relator seeks a writ of habeas corpus on the ground that the trial judge, sitting without a jury, in relator's state trial for burglary, conspiracy and possession of burglary tools learned of the defendant's possible implication in other crimes as a result of reading a statement of one of the witnesses and thereby became prejudiced. The statement of the witness the trial judge read has been submitted to this court accompanied by an affidavit given by William D. Harris, Esquire, who represented the Commonweath at relator's trial, stating that the document is a copy of the statement re-

ferred to in relator's trial.[1] That part of the statement which is complained of here reads as follows (the statement is here reproduced verbatim; errors are errors in the original):

"Q. Miss HOGAN, will you go on and tell us what you know of a 1958 Chev. Conv. Cp. which was used in the commission of a Burglary at the American Business System Co. at 2929 "D" St. on 6–12–59.

"A. On this date (6–12–59) I met John BERKERY and Vincent BLANEY at the 2–4 club at 13th & Chancellor St. this was about 2:30 A.M. and we stayed there until closing which was about 3:00 A.M. John BERKERY and Vincent BLANEY drove me home in John BERKERY's car. When we arrived at my house BLANEY and BERKERY both asked me if they could borrow the car that was left in my possession by Bobby MARTIN. This was a 1958 Chev. Impala Conv. which had a Fla. license tag. They told me that they had to go someplace on an errand and would be back in an hour. I gave them the keys to this car and BLANEY and BERKERY both drove off in it. They didn't return and I didn't hear from them until several days latter. I made a few phone call's and found out for myself that they were both picked up on an attempted Burglary at "B" and Indiana Sts. Two latter (days) I met Barney (BLANEY) in a tap room and I asked him what happed to the car, and he told me that the cops had taken possession of it and compounded it at front and Westmoreland Sts, because they wre picked up on an attempted Burglary. I contacted Janney GROSSON and I asked her if she would pick up the car at the 30th District at Front & Westmoreland Sts. She said yes. Janney CROSSON is Bobby Martin's (owner of the car) ex-wife. A few days after I again met Vincent BLANEY and John BERKERY at Fagan's Bar, 3100 Blk. Kensington Ave. and I said to them I was afraid I was going to get in trouble. BLANEY said your "Crazy", don't worry I'll beat this like I beat everything else, they dont have anything on us.

"Q. Miss HOGAN, at the time of the above conversation, was John BERKERY present?

"A. Yes.

"Q. When Vincent BLANEY refered to us in his conversation, who did he mean?

"A. John BERKERY and himself."

In United States ex rel. Scoleri v. Banmiller, 310 F.2d 720 (C.A.3, 1962), the court held the admission of evidence of Scoleri's twenty-five prior unrelated convictions of, or pleas of guilty to charges of robbery with violence was "so prejudicial, so unfair, as to constitute a denial of due process of law to Scoleri." 310 F.2d at 736. In a later case, United States ex rel. Rucker v. Myers, 311 F.2d 311 (C.A.3, 1962), the Court of Appeals for the Third Circuit refused to apply Scoleri. Emphasizing the overwhelming evidence of guilt and the absence of a defense, the court stated that the record provided "no basis for apprehension that the jury determination of guilt may have been unfairly influenced by the evidence of prior crimes." 311 F.2d at 315. Clearly, the Court of Appeals for the Third Circuit does not consider that any exposure of even a jury of laymen to evidence of other crimes committed by the defendant, with proper instructions limiting the use of such evidence, infects the trial with fundamental unfairness.[2]

1. The circumstances leading to the trial judge's examination of the statement are set out in our opinion United States ex rel. Berkery v. Rundle, 226 F.Supp. 579 (E.D.Pa., 1964) in which we denied the writ because relator had not exhausted available state remedies.

2. Cf. United States v. Clarke, 343 F.2d 90 (C.A.3, 1965).

The court in Rucker noted its approval of the admission of evidence of prior crimes for the limited purpose of attacking the credibility of a defendant who has testified. 311 F.2d at 314–315. In Scoleri the jury was asked to perform what the court called, "psychological wizardry" (310 F.2d at 725): To consider the evidence they had heard of twenty-five convictions or pleas of guilty of violent robbery only after they determined that the defendant was guilty of the charged crime. The court went on to emphasize it was deciding only that under all the circumstances of that case the introduction of evidence of prior crimes needlessly prejudiced the defendant's trial. The court said:

> "* * * every case which involves the delicate balance of comity between the courts of a state and those of the federal system must be considered and decided on its own precise facts. In the case at bar we did not lay down a rule of evidence for the Pennsylvania state tribunals. We handed down a judgment as to the fundamental fairness or unfairness of what was done in this particular case. * * *" 310 F.2d 720, at 736.

The present case is clearly not within the confines or import of Scoleri. This relator was given a fair trial and there is no reason to conclude that the trial judge was prejudiced in any respect. In assessing the fairness of relator's trial, it is helpful to point out the differences between the operative facts in Scoleri and the present case.

The trier of fact in relator's trial was an experienced judge, not a jury of laymen. Despite language in Scoleri indicating that judges might have difficulty applying the instructions given the jury limiting the use of Scoleri's prior convictions,[3] it is perfectly clear that the trial judge in relator's trial was able to and did avoid considering the complained of statement in determining the question of relator's guilt.

We start with the presumption that a trial judge sitting without a jury is presumed to act only upon the competent evidence in the case before him. Dove v. Peyton, 343 F.2d 210, 214 (C.A. 4, 1965). Cf. Stevens v. Vowell, 343 F.2d 374, 380 (C.A.10, 1965). A judge, from the time of law school, is trained in disregarding irrelevant facts in reaching any conclusion. His experience as a lawyer and a judge further reinforces this discipline.

In the present case we do not have the situation as in Scoleri in which the mind of each juror was asked to set aside and ignore inflammatory evidence while masticating on one question and afterward retrieve that evidence and consider it in connection with another question. Evidence of charges of participation in other crimes is not admissible as substantive evidence for any purpose in Pennsylvania. This is hornbook law[4] and the record is clear that the trial judge did not weigh the statement in his determination of guilt. The judge voiced his realization that the content of the statement now complained of was irrelevant immediately upon reading it.[5] Then in an opinion treating

3. "* * * we cannot believe that the procedural scheme imposed by Section 701 of the Criminal Code of 1939 and the 'Parker Rule' would permit the jurors to put the knowledge of Scoleri's twenty-five convictions or pleas of guilty out of their minds while considering his guilt or innocence. Certainly such a feat of psychological wizardry verges on the impossible even for berobed judges. * * *" 310 F.2d 720, at 725.

4. See Commonwealth v. Boulden, 179 Pa. Super. 328, 116 A.2d 867 (1955). See also Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Note, Use of Prior Crimes to Affect Credibility and Penalty in Pennsylvania, 113 U. of Pa.L.Rev. 382 (1965).

5. "The only trouble is I fear that if there is a general examination as to the statement we are going to bring in a lot of irrelevant material that may be harmful to both sides. I just finished reading a statement here that—perhaps I shouldn't read this, because I am the jury—particularly conversation about

relator's motion for an order to have the waiver of trial by jury withdrawn (which motion was filed after the verdict was announced) the trial judge made it abundantly clear that prejudice or knowledge of defendant's other activities played no part in his determination.[6]

Further contrasting this petition with that of the facts in Scoleri, we note that in Scoleri the evidence introduced to a jury of laymen was of twenty-five convictions of robbery with violence. In the present case, a fairly innocuous statement that perhaps recalled to the judge publicity of relator's other trouble with the law was read by a judge. Focusing upon the nature of the evidence in question in each case it cannot be gainsaid that the evidence of convictions and pleas of guilty of twenty-five robberies with violence is significantly more prejudicial than the statement involved in the present case.

We have already noted that Scoleri exhorts a test of fundamental fairness, not an absolute application of a broad rule of evidence. My Brother Judge Higginbotham reading United States ex rel. Scoleri v. Banmiller, 310 F.2d 720 (C.A. 3, 1962) and United States ex rel. Rucker v. Myers, 311 F.2d 311 (C.A.3, 1962) together, announced:

> "* * * I read these two decisions as adopting a factual case-by-case approach to determine whether the introduction of a defendant's prior record under the Parker Rule may be prejudicial. Only where there is no realistic probability of serious prejudice, as in Rucker, should a conviction based upon the Parker Rule be permitted to stand. * * *" United States ex rel. Johnson v. Rundle, 243 F.Supp. 695, D.C., E.D.Pa., September 30, 1964.

The conclusion is inescapable that there is no realistic possibility of any prejudice in relator's trial and the petition will therefore be denied.

the co-defendant, who is now deceased." Notes of testimony of relator's trial, p. 138.

6. "There is no question that the defendant's name had appeared in the public press in relation to another case which was alleged to have occurred subsequent to the present incident. This was given wide publicity. However, the trial judge was very zealous in protecting the defendant's rights and there is nothing in the record which would indicate that the trial judge had any fixed opinion whatsoever of the defendant's guilt or permitted any knowledge he may have had of the defendant's identity to influence the decision of the court in any manner." Commonwealth v. John Berkery, Court of Quarter Sessions for the County of Philadelphia, June Sessions, 1959 (September 6, 1962).